(105 N. W. 722.)

THE STATE OF NORTH DAKOTA v. ERNEST MALMBERG AND JOHN MALMBERG.

Opinion filed November 8, 1905.

**Witness May Be Cross-Examined as to Specific Facts Showing Motive for Falsifying When He Denies Such Motive.**

1. On cross-examination, the examining party has an absolute right, within reasonable limits, to interrogate the witness as to specific facts and circumstances which tend to show ill will or other motive for falsifying, although the witness has denied the existence of such motives.

**Same — Contradiction of Witness on Collateral Matters.**

2. Where the facts which it is sought to establish by cross-examination, for the purpose of discrediting the witness, are such as to detract from his credit or capacity to testify truly in the particular case on trial, as distinguished from facts discrediting him generally, the rule forbidding contradiction of a witness on collateral matters does not apply.

**Ill Will of Witness — Cross-Examination as to Cause, Nature and Extent Whereof.**

3. Where a party is seeking to show that an adverse witness' testimony should be discredited by reason of ill will or an existing

temptation to falsify in the case on trial, he has the right to show so
much of the facts and circumstances as may be necessary to fairly
inform the jury of the cause, nature and extent of the alleged im-
proper influence.

Appeal from District Court, Barnes county; *Cowan,* J.

Ernest Malmberg and John Malmberg were convicted of main-
taining a liquor nuisance, and appeal.

Reversed.

*Young, Wright & Jones,* for appellants.

A witness may be cross-examined so as to test his bias, prejudice
or hostility towards a party to the suit, and asked whether he has
a controversy with him against whom he is testifying. Atwood v.
Welton, 7 Conn. 66; Selph v. State, 22 Fla. 637; State v. McFarlan,
6 So. 728; Blessing v. Hapr, 8 Md. 31; People v. Christie, 2 Abb.
Prac. 256; State v. Mase, 24 S. E. 798; Daffin v. State, 21 Tex.
App. 76; Kellogg et al. v. Nelson et al., 5 Wis. 125; Fincher v.
State, 58 Ala. 215.

Cases holding that it is improper on cross-examination to go into
the cause of a witness' hostile feelings are confined to those where
he admits them. People v. Macard, 40 N. W. 784; State v. Ber-
rier et al., 12 S. E. 251; Conveyer v. Field, 61 Ga. 258; Patman
v. State, Id. 379.

*C. N. Frich,* Attorney General, and *Alfred Zuger,* for respond-
ents.

The conduct and extent of the cross-examination of a witness,
affecting his credibility, is largely in the discretion of the trial court.
Storm v. United States et al., 94 U. S. 76, 24 L. Ed. 42.

Questions irrelevant to the matter in issue cannot be asked of a
witness to impeach him. U. S. v. Dickinson, Fed. Cases No. 14958;
Rosenbaum v. State, 33 Ala. 35b; 2 Elliott on Ev. section 977;
Odiorne v. Winkley, Fed. Cases No. 10432, 15 So. Rep. 914.

ENGERUD, J. Defendants appeal from a judgment rendered pur-
suant to a verdict convicting them of the crime of maintaining a
nuisance, as defined in section 7605, Rev. Codes 1899.

On cross-examination of the complaining witness the defendants'
counsel sought to show by appropriate questions that the defend-
ant and the witness were members of opposing factions in the

village of Litchville, that the factional differences had engendered personal hostility between the witness and defendants, and that such ill feeling had been further embittered by the fact that the witness had been informed that one of the defendants was a rival of the witness for the appointment to the position of postmaster of the village. The trial court sustained objections made to these questions, and we think the ruling was erroneous. If the ill feeling and rivalry existed, as indicated by the questions asked, they were clearly important facts for the consideration of the jury in determining the weight to be given to the witness' testimony. Before the questions objected to were asked, the witness had testified, but in a somewhat evasive manner, in response to questions on cross-examination, that he entertained no unfriendly feelings towards the defendant and that he did not know at the time the prosecution was commenced, or since, that the defendant was a rival candidate for the post office. Some of the questions objected to called the witness' attention to his testimony at the preliminary examination, where the examiner claimed the witness had sworn in substance that he knew that one of the defendants was a rival candidate, and the questions sought to elicit from the witness an admission or denial of such testimony. The other questions objected to were designed to obtain from the witness an admission or denial of the facts, as indicated by the questions, that the witness and defendants were prominent adherents of opposite factions, and that the factional differences had engendered a feeling of bitter personal hostility on the part of the members of one faction against those of the other. The manifest purpose of this line of cross-examination was to overcome the effect of the witness' preceding statement denying the ill feeling and rivalry, and to test the credibility of the witness. If he gave an affirmative answer to the questions, his admissions would tend to discredit him. If he answered in the negative, the defendant might show, if he could, by other witnesses that the answers were false.

Respondent contends that the line of cross-examination objected to was wholly irrelevant, or was at least on a subject collateral to the issues, and hence that the extent of the cross-examination along that line was a matter resting in the sound discretion of the trial court. He further claims that the cross-examiner was concluded by the witness' denial of the ill feeling and rivalry, because that subject of inquiry being collateral to the issues could not be used as a basis for impeachment. As already indicated, the testimony

sought to be elicited by the questions was relevant and material to the controversy, because it bore directly upon the credibility of the witness; and the questions were therefore proper cross-examination. Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003; State v. Kent, 5 N. D. 516, 67 N. W. 1052, 35 L. R. A. 518; State v. Rozum, 8 N. D. 548, 80 N. W. 477; State v. Ekanger, 8 N. D. 559, 80 N. W. 482. In a limited sense the subject of inquiry was collateral to the issues in the case, but it was not collateral in the sense that term is often used when applying the familiar rules which respondent invokes. There is a wide distinction between evidence which affects the general credibility of a witness and evidence which affects the credibility of a witness' testimony in a specific case. Both are proper subjects for cross-examination. Evidence of facts which are material only because they affect the general credibility of the witness, such as previous conviction of crime, evil associations, and the like, can in general be shown only by cross-examination of the witness, and the examination is concluded by the answers, however false they may be. The rule itself and the reasons for it are so familiar to the profession that a statement of them is unnecessary. With respect to evidence of facts which do not detract from his general credit, but which tend to diminish his credit and capacity to testify correctly in the particular case, a different rule applies. That rule is well stated in Fincher v. State, 58 Ala. 215, 219, as follows: "Of the several modes of assailing the credibility of a witness, the one most usually resorted to is a cross-examination as to his relationship to the parties, his interest in the pending suit, his hostility to the prisoner, if it be a prosecution for a criminal offense, his motives, and whatever may fairly be presumed to bias him in favor of the party at whose instance he is testifying and against the adverse party. These are matters collateral to the main issue of facts which is to be determined; and, while the general rule is that the answer of a witness to collateral questions cannot be contradicted by the party cross-examining, an exception obtains in reference to questions of this character, which are directed, not against his general credit, but against his credit and capacity to testify accurately in the particular case. 1 Whart. Law of Ev. section 545; McHugh v. State, 31 Ala. 317; Bullard v. Lambert, 40 Ala. 204; 1 Green. Ev. section 450; Blakey v. Blakey, 33 Ala. 611. The circumstances which affect the particular credit of the witness are generally incapable of proof save by his acts or declarations, and it is but just that the witness should have his attention directed

to them, and whatever explanation can be given of them without entering into particulars, should be received. 4 Phill. Ev. (2 C. & H. Notes) 717. If the witness should deny the relationship or bias, it may be proved by other evidence. Declarations in the presence of third persons, indicative of hostility, may be called to the attention of the witness, and he may be required to admit or deny them; if he deny them, the persons hearing them, to whom the attention of the witness is directed, may be called to contradict him. How far the bias of the witness, from whatever cause it arises, affects his credibility, is a question for the consideration of the jury, and depends upon his manner of testifying before them, the consistency of his evidence with other evidence in the cause, and the probability of its truth or falsity when considered in connection with all the facts and circumstances surrounding the parties, and which are parts of the transaction. The law does not discredit the witness because of the bias—it is simply a fact for the consideration of the jury in determining how far they can safely rely on his testimony. A remote relation would not usually lie under the same imputation on his credit as a nearer relation whose sympathies and affections were more deeply involved. A hostile feeling, generated by a sudden quarrel, would not reflect the same discredit as that which is shown to be malignant. The extent of the hostility of the witness is the subject of just inquiry. It is not enough, and the door to further cross-examination is not closed, so that it does not descend to the particulars of the controversy between the witness and the party, by the mere statement of the witness that he is hostile to the party against whom he is testifying. The party has the right to go further and show that the hostility is malignant and that the witness·has the inclination, and would not scruple at the means or manner, of doing him the most grievous injury." We think the language above quoted correctly states the rule recognized almost universally throughout this country. This entire subject is very ably and clearly discussed and explained by Prof. Wigmore in his late work on Evidence, under the general head "Testimonial Impeachment." Wigmore on Evidence, vol. 2, c. 20 et seq. See particularly section 879, 943, 949-952, 1001-1005.

The defendant had the absolute right to show by cross-examination that the witness entertained hostile feelings against the defendant, or was in such a position with respect to him as to be under temptation to give false or biased testimony. The bare fact that ill feeling existed or that there was a temptation to falsify would be of little aid in determining what effect, if any, those facts

should have on the weight of the witness' testimony. The unfriendliness or temptation might be so slight as to render it altogether unlikely that the witness would be influenced by it; and, on the other hand, the ill will might be so bitter or the temptation to falsify so great as to justify the gravest doubts as to the witness' truthfulness in the particular case on trial. It is plain, therefore, that, in order to intelligently determine how much credit a witness subject to such influence is entitled to, it is necessary to be informed of the cause, nature and extent of the unfriendliness or temptation. It is therefore the absolute right of the party attacking the credibility of such a witness to elicit by cross-examination the facts and circumstances which tend to prove the existence and extent of the supposed improper motives. The extent of which examination into these collateral facts and circumstances shall be permitted rests in the sound discretion of the trial court, and no rule governing the exercise of such discretion can be laid down more definitely than to say that only so much and no more of the facts and circumstances should be admitted as are necessary to give a fairly intelligent understanding of the cause, nature and extent of the supposed improper influence. Kellogg v. Nelson, 5 Wis. 125, 131; Blessing v. Hape, 8 Md. 31; Atwood v. Welton, 7 Conn. 66; Daffin v. State, 11 Tex. App. 76; State v. McFarlain (La.) 6 South. 728; People v. Christie, 2 Abb. Prac. 256; Durham v. State, 45 Ga. 516; Wigmore on Evidence, section 948-953. The same erroneous rulings were repeated in the cross-examination of two others of the five witnesses for the state.

It is urged by respondent that the evidence for the state clearly established the guilt of the defendants, and their testimony was not contradicted either by the defendants themselves. or by any witnesses in their behalf, and therefore no prejudice could have resulted to the accused from the errors assigned. There are, perhaps, cases where it might be made to appear from the record that an error like that we have been discussing was without prejudice. This is not such a case, however. What evidence the defendant might have seen fit to produce, had he been permitted to show that the truthfulness of the state's witnesses was questionable, or what effect the excluded evidence might have had on the minds of the jurors, if it had been admitted, we have no means of knowing.

The error above discussed requires a reversal, and we do not deem it necessary to discuss the remaining errors assigned.

Judgment reversed, and new trial ordered. All concur.