## · STATE v. TOLLEY.

(136 N. W. 784.)

**Libel and slander — indictment and information — criminal responsibility.**

1. An information for criminal libel, charging that defendant did wilfully, unlawfully, feloniously, maliciously, and knowingly, and with malicious intent to injure one O., write, print, and publish, and cause to be written, printed, and published of and concerning him, the said O., a certain malicious, false, and defamatory libel, etc., examined and *held* not vulnerable to attack, either upon the ground that the act charged as an offense is not clearly and distinctly set forth in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended or what is charged, or that more than one offense is charged in such information.

**Indictment and information — statutory provisions.**

2. Where a statute mentions several things disjunctively as constituting one and the same offense, all punishable alike, the whole may be charged conjunctively in a single count as constituting a single offense.

**Order of proof — discretion — criminal law — cross-examination — witnesses.**

3. The order of proof, as well as the scope of the cross-examination of witnesses, is, and of necessity must be, largely committed to the sound discretion of the trial court.

*Held*, that the rulings of the court below restricting the cross-examination of the complaining witness were, in the light of the record, nonprejudicial.

**Witnesses — trial court — discretion — examination.**

4. Defendant's contention that the trial court abused its discretion in limiting the direct examination and permitting unlimited cross-examination of himself as a witness is *held* without substantial merit.

**Rulings on evidence held correct.**

5. Certain alleged rulings in the admission and exclusion of testimony examined and *held* correct.

**Criminal law — cross-examination — remarks of judge.**

6. During the cross-examination of defendant, he was asked to state whether as a fact a certain deposit had been made to his credit in a certain bank. He evaded the question by giving several answers which were not responsive; such as, "I have never been able to find it," "I will swear I looked faithfully and made a search for it and never found it," etc. And, again, he testified, "It has not been deposited to my knowledge to this day," and "the books don't show it." Whereupon the state's attorney stated, "I am not talking about what the books show;" whereupon the trial court made the following remark: "I think he has answered it both ways. Never mind, answer the question." *Held*, that such remark was nonprejudicial, as the court clearly thereby meant that he had answered both that no such deposit had been made and that the books did not disclose such a deposit. No criticism that the defendant had testified falsely, either in one instance or the other, was made or intended.

**Libel — instructions.**

7. The assignments of error predicated upon the giving of certain instructions and the refusal to give others requested by defendant, as well as those predicated upon the failure to instruct on certain essential subjects, *held* without merit. We find nothing in the instructions, when considered as a whole, prejudicial to the rights of the defendant.

**Criminal law — appeal — technical errors.**

8. Under the provisions of the Revised Codes, § 10,157, it is made the duty of this court on appeals in criminal cases, to give judgment without regard to technical errors which do not affect the substantial rights of the parties. From a consideration of the entire record, which is very voluminous, we are unable to discover any error affecting the substantial rights of appellant. Applying the above legislative mandate, the judgment of conviction is affirmed.

**Libel and slander — evidence.**

9. Evidence examined as to its sufficiency to sustain the conviction, and *held* amply sufficient.

**Libel and slander — jury — verdict.**

10. Section 9 of the Constitution of North Dakota, which provides that in all civil and criminal trials for libels "the jury shall have the same power of giving a general verdict as in other cases; and in all indictments or informations for libels the jury shall have the right to determine the law and the facts under the direction of the court as in other cases,"—is construed and held not to make the jurors the judges of the law. The jury must accept the law from the court and apply such law to the facts. Such constitutional mandate merely vests in the jury in such cases the right to render a general verdict. They are given the right to determine the law merely in the same manner that they do in other cases where a general verdict is returned and the judge is without power to require a special verdict in such cases. Section 9991, Rev. Codes, must receive the same construction. Section 10,042, Rev. Codes, goes a step further by depriving the jury of the power to return a special verdict in criminal libel cases.

Opinion filed May 13, 1912.

Appeal from District Court, Ward county; *K. E. Leighton,* J.

E. C. Tolley was convicted of criminal libel, and from an order denying his motion for new trial, he appeals.

Affirmed.

*George A. McGee* and *P. M. Clark,* for appellant.

The information was defective. State v. Hakon, 21 N. D. 133, 129 N. W. 234; State v. Marcks, 3 N. D. 532, 58 N. W. 25; State v. Smith, 2 N. D. 515, 52 N. W. 320; People v. Alibez, 49 Cal. 452, 1 Am. Crim. Rep. 345; People v. Stock, 21 Misc. 147, 47 N. Y. Supp. 94; Yost v. Com. 5 Ky. L. Rep. 935; Hawkins v. Com. 70 S. W. 640, 24 Ky. L. Rep. 1034; State v. Huffman, 136 Mo. 58, 36 S. W. 797; State v. Mattison, 13 N. D. 391, 100 N. W. 1091; State v. Ashpole, 127 Iowa, 680, 104 N. W. 281; Thweatt v. State, 49 Tex. Crim. Rep. 617, 95 S. W. 517; State v. Brown, — Miss. —, 28 So. 752; State v. Gould, 26 W. Va. 258; Com. v. Melingin, 5 Ky. L. Rep. 429; People v. Hartwell, 166 N. Y. 361, 59 N. E. 929; Breeland v. State, 79 Miss. 527, 31 So. 104; State v. Comfort, 5 Mo. 357; People v. Frazier, 36 Misc. 280, 73 N. Y. Supp. 446; Porter v. State, 48 Tex. Crim. Rep. 125,

86 S. W. 767; Meadow v. State, 136 Ala. 67, 34 So. 183; State v. Dennison, 60 Neb. 192, 82 N. W. 628.

The court abused its discretion in limiting the cross-examination of the witness Olsen. State v. Hakon, 21 N. D. 133, 129 N. W. 234; State v. Malmberg, 14 N. D. 523, 105 N. W. 615; State v. Hazlett, 14 N. D. 491, 105 N. W. 617.

Defendant should be permitted to testify as to why he did the act and what provoked him. Wrege v. Jones, 13 N. D. 267, 112 Am. St. Rep. 679, 100 N. W. 705, 3 Ann. Cas. 482; Lauder v. Jones, 13 N. D. 527, 101 N. W. 907; State v. Johnson, 17 N. D. 560, 118 N. W. 230.

The remarks of the court were prejudicial to the defendant, and an invasion by the court of the province of the jury. State v. Hazlett, 14 N. D. 497, 105 N. W. 617; Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003; State v. Barry, 11 N. D. 428, 92 N. W. 809; Wheeler v. Wallace, 53 Mich. 355, 19 N. W. 33; Sharp v. State, 14 Am. St. Rep. 27, and note (51 Ark. 147, 10 S. W. 228) South Covington & C. Street R. Co. v. Stroh, 23 Ky. L. Rep. 1807, 57 L.R.A. 882, 66 S. W. 177; State v. Peltier, 21 N. D. 188, 129 N. W. 451; Wilson v. Territory, 9 Okla. 331, 60 Pac. 112, 12 Am. Crim. Rep. 582; Thomp. Trials, § 218; McMinn v. Whelan, 27 Cal. 319; People v. Hare, 57 Mich. 505, 24 N. W. 843; State v. Murphy, 9 N. D. 175, 82 N. W. 738; State v. Stowell, 60 Iowa, 535, 15 N. W. 417; State v. Philpot, 97 Iowa, 365, 66 N. W. 730; State v. Sharp, 51 Ark. 147, 14 Am. St. Rep. 27, 10 S. W. 228; State v. Jacobs, 30 S. C. 131, 14 Am. St. Rep. 897, 8 S. E. 698; Valley Lumber Co. v. Smith, 71 Wis. 304, 5 Am. St. Rep. 216, 37 N. W. 412; State v. Harkin, 7 Nev. 377; State v. Stowell, 60 Iowa, 535, 15 N. W. 417; Russ v. The War Eagle, 9 Iowa, 374; Shakman v. Potter, 98 Iowa, 61, 66 N. W. 1046; State v. Lightfoot, 107 Iowa, 344, 78 N. W. 41, 11 Am. Crim. Rep. 588; Moore v. State, 85 Ind. 90; People v. Webster, 111 Cal. 381, 43 Pac. 1114; People v. Casey, 65 Cal. 260, 3 Pac. 874, 5 Am. Crim. Rep. 318; People v. Garbutt, 17 Mich. 9, 97 Am. Dec. 162.

*Dudley L. Nash,* for the State.

The information charged but one offense. State v. Bradley, 15 S. D. 148, 87 N. W. 590; People v. Barnnovitch, 16 Cal. App. 427, 117 Pac. 572; People v. Fitzgerald, 51 Colo. 175, 117 Pac. 135;

People v. Gosset, 93 Cal. 641, 29 Pac. 246; People v. Thompson, 111 Cal. 242, 43 Pac. 748; People v. Gusti, 113 Cal. 177, 45 Pac. 263; People v. Wolfrom, 15 Cal. App. 732, 115 Pac. 1088; State v. Corwin, 151 Iowa, 420, 131 N. W. 659; 1 Bishop, New Crim. Proc. § 586; Ben v. State, 22 Ala. 9, 58 Am. Dec. 234; State v. Kerr, 3 N. D. 523, 58 N. W. 27.

Words are actionable if they consist in a statement of facts which would naturally and presumably be understood by the hearers as a charge of crime. Stroebel v. Whitney, 31 Minn. 384, 18 N. W. 98; Lewis v. Hudson, 44 Ga. 568; Proctor v. Owens, 18 Ind. 21, 81 Am. Dec. 341; Morgan v. Livingston, 2 Rich. L. 573.

Courts will construe a libelous publication in its ordinary popular sense. Hotchkiss v. Olmstead, 37 Ind. 74; Com. v. Child, 30 Pick. 205; World Pub. Co. v. Mullen, 43 Neb. 126, 47 Am. St. Rep. 737, 61 N. W. 108; Simons v. Burnham, 102 Mich. 189, 60 N. W. 478; Ewing v. Ainger, 96 Mich. 587, 55 N. W. 996; Poprok Zapadu Co. v. Zizkovsky, 42 Neb. 64, 60 N. W. 358; Post Pub. Co. v. Hallem, 8 C. C. A. 201, 16 U. S. App. 613, 59 Fed. 530; Bradley v. Cramer, 59 Wis. 309, 48 Am. St. Rep. 511, 18 N. W. 268; Bettner v. Holt, 70 Pac. 270, 11 Pac. 713; Fisher v. Clement, 10 Bart. C. 472; Pennington v. Meeks, 46 Mo. 217; People v. Taylor, 36 Cal. 256; Townshend, Slander & Libel, § 84.

FISK, J. Appellant was convicted in the district court of Ward county of the crime of criminal libel, and he has appealed both from the judgment of conviction and from the order denying his motion for a new trial. There are 221 assignments of error, but they are grouped and argued in appellant's brief under six heads, and they will be considered in the order thus presented.

1st. It is contended that the information is defective, and the same was challenged, both by demurrer and by motion in arrest of judgment. There are four grounds of demurrer, only two of which are argued in appellant's brief, which grounds are as follows:

"2d. That the information in the above-entitled action does not substantially conform to the requirements of the Penal Code and Code of Criminal Procedure of North Dakota, 1905, and acts amendatory thereof, in this,—that the act charged as an offense in said information

is not clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended or what is charged;" and,

"3d. That more than one offense is charged in said information."

The information, omitting formal parties, is as follows:

"Dudley L. Nash, state's attorney in and for the county of Ward, in the state of North Dakota, as informant here in open court, in the name and by the authority of the state of North Dakota, gives this court to understand and be informed:

"That heretofore, to wit, on the twenty-seventh day of May, in the year of our Lord, one thousand nine hundred and nine, at the county of Ward in the state of North Dakota, one E. C. Tolley, late of said county of Ward and state aforesaid, did commit the crime of criminal libel, committed as follows, to wit: That at said time and place, the said E. C. Tolley, defendant herein, did wilfully, unlawfully, feloniously, designedly, maliciously, and knowingly, and with malicious intent to injure one Ambrose B. Olson, write, print, and publish, and cause to be written, printed, and published, of and concerning him, the said Ambrose B. Olson, a certain malicious, false, and defamatory libel, in language tending to impeach the honesty, integrity, and reputation of him, the said Ambrose B. Olson, and thereby to expose him, the said Ambrose B. Olson, to public hatred, ridicule, and contempt, and deprive him of the benefits of public confidence and social intercourse; and the said Ambrose B. Olson, at the time of the said malicious and defamatory publication, was a resident of the county of Ward, in the state of North Dakota, and said libelous publication was then and there in the words and figures following, to wit:

" 'I did refuse to put any money into the hands of Ambrose Olson last fall, for the reason that he has misappropriated hundreds of dollaws of my money, and I have no confidence in his handling any more of it, and would not feel justified in letting him carry a rat's tail to a sick kitten.'

"The said E. C. Tolley then and there, thereby meaning and tending to charge the said Ambrose B. Olson with having committed a public offense, to wit, the crime of embezzlement, he, the said E. C. Tolley, well knowing that the said defamatory matter would expose him, the said Ambrose B. Olson, to public hatred, contempt, and ridicule, and

23 N. D.—19.

would impeach the honesty, integrity, and reputation of him, the said Ambrose B. Olson, and deprive him, the said Ambrose B. Olson, of the benefits of public confidence, and social intercourse.

"This contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of North Dakota."

We do not think there is any merit in either of such contentions, and the trial court properly overruled such demurrer. Such information is sufficiently definite and specific in charging the manner of the commission of the crime, to apprise defendant of the nature of the charge against him, and to thus enable him to prepare his defense.

Section 8877, Rev. Codes 1905, defines criminal libel as follows: "A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation, or effigy tending to expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence or social intercourse, . . ." and the following section provides that "every person who makes or composes, dictates or procures the same to be done, or who wilfully publishes or circulates such libel, or in any way knowingly or wilfully aids or assists in making, publishing, or circulating the same, is guilty of a felony."

It will be seen that the gist of the crime is the malicious defamation of a person, made public in one or more of the modes prescribed, and tending to expose such person to public hatred, contempt, or ridicule, etc. It seems to be appellant's contention that, because the information fails to charge that the defendant committed the acts constituting the libel in but one of two ways, that is, in person or through an agent, that the same is indefinite and uncertain. In this we cannot concur. The information charges him in the conjunctive with committing the acts and causing them to be committed. Such an allegation charges but one offense, and does not render the information vulnerable to attack for duplicity. It is well settled that where a statute mentions several things disjunctively as constituting one and the same offense, all punishable alike, the whole may be charged conjunctively in a single count as constituting a single offense. State v. Kerr, 3 N. D. 523, 58 N. W. 27. See also State v. Bradley, 15 S. D. 148, 87 N. W. 590; People v. Fitzgerald, 51 Colo. 175, 117 Pac. 135; People v. Barnnovich, 16 Cal. App. 427, 117 Pac. 572; People v. Gosset, 93 Cal. 641, 29 Pac. 246; State v. Corwin, 151 Iowa, 420, 131 N. W. 659; 1 Bishop, New Crim.

Proc. § 586. The case of State v. Hakon, 21 N. D. 133, 129 N. W. 234, relied on by appellant's counsel, is not in point. The statute there involved was § 9317, Rev. Codes, which prescribed that "every person who wilfully administers poison to any animal, the property of another, and every person who maliciously exposes any poisonous substance, with intent that the same shall be taken by any such animal, is punishable. . . ." The information in that case merely charged the defendant with having maliciously administered poison to a certain animal, and the trial court charged the jury that maliciously exposing poison with the intent that it might be taken by animals would be administering the same under the said statute, and this was held error, the court says: "The statute provides two independent ways by which the offense of poisoning animals may be committed, and an allegation of wilfully and maliciously administering poisons will not warrant proof of poisoning by any other method." In other words, we merely there held that the state having alleged that the offense was committed in but one of two statutory modes, it was restricted thereto at the trial. We have no such situation in the case at bar, but on the contrary the defendant is charged in the conjunctive with both having committed, *and* caused to be committted, the acts charged against him.

In the second subdivision of appellant's brief, he complained of the ruling of the court below in restricting the cross-examination of the complaining witness Olson. Numerous rulings claimed to be prejudicial are called to our attention by appellant's counsel. We shall not undertake to refer to them in detail in this opinion. Suffice it to say that, after considering each of such rulings, we are agreed that none of them constitute prejudicial error. The record discloses that a very extensive cross-examination of the complaining witness was permitted. Any errors in excluding testimony on cross-examination of such witness were thereafter cured by permitting the subject-matter thereof to be fully covered. The order of proof, as well as the scope of the cross-examination, is, and of necessity must be, largely committed to the sound discretion of the trial court. We find nothing in the opinions of this court in the cases of State v. Hakon, supra; State v. Malmberg, 14 N. D. 523, 105 N. W. 614; or in State v. Hazlett, 14 N. D. 491, 105 N. W. 617, inconsistent with our conclusions as above stated.

Appellant next complains of the alleged action of the trial court in

limiting the direct examination and permitting unlimited cross-examination of himself as a witness. We find no merit in this contention. The record discloses that appellant was accorded a full opportunity of giving testimony on the direct examination, and that the trial court did not abuse its discretion in permitting the cross-examination of this witness. Defendant was permitted to testify fully as to his reasons and motives for publishing the alleged libelous matter. We discover no prejudicial error in this feature of the case.

The fourth subdivision of appellant's brief charges error in the ruling, excluding Exhibit "B2," which is an article published by one Wooledge. The defense sought to prove that the alleged libelous matter set forth in the information was published by appellant as a reply to the previously published article, Exhibit "B2," and also in reply to an article, Exhibit "B1," theretofore published by the complaining witness, Olson, for the purpose of vindicating himself in the public eye from the imputations contained in such articles. Exhibit "B2," was excluded on the ground that it was incompetent, irrelevant, and immaterial. We discover no error in such ruling. We are wholly unable to see how such exhibit was either relevant or material to the issues on trial. The statement in such exhibit, to the effect that defendant refused to contribute toward the campaign fund in the county division contest in favor of the proposed organization of the new county of Lake, would not justify the publication by defendant of the libelous article charged in the information of and concerning the complaining witness, Olson, nor would it constitute a mitigating circumstance for the commission of the crime charged. Furthermore, defendant testified fully and in detail as to the intent and motive which prompted him to publish such libel.

This brings up to the fifth point in appellant's brief, which is that the trial court make prejudicial remarks during the trial in the presence of the jury. The only remark complained of was made in connection with the examination of defendant relative to whether certain moneys collected by Olson and belonging to defendant had not been deposited to defendant's credit in a certain bank. He was asked to state whether as a fact any such deposit had been made. He evaded the question by stating: First, that "I have never been able to find it;" second, "I will swear I looked faithfully and made a search for it, and

never found it;" Third, "It has not been deposited to my knowledge to this day;" again. "The books don't show any money coming from Weber to-day that is deposited." Thereupon the state's attorney interrupted the witness, stating, "I am not asking you that now, answer my question," and he again answered, "The books don't show it." The state's attorney then stated, "I am not talking about what the books show." At this point the trial court made the remark complained of, as follows: "I think he has answered it both ways. Never mind, answer the question." It is perfectly apparent that all the court meant by such remark was that he had answered both that no such deposit had been made and that the books did not disclose such a deposit, and the jury must have so understood it. The court was not criticizing defendant for having testified both ways in answer to the same question. We are clear, therefore, that appellant's contention in this respect is devoid of any merit.

Under appellant's sixth point he challenges the correctness of the court's instructions to the jury. He first asserts that the court erroneously charge the jury as to the burden of proof; and, second, that it failed to instruct on certain essential subjects and in certain specified particulars. We will notice these contentions briefly and in the order presented in appellant's brief.

We fully concur in the views of counsel for appellant, that the burden is not on the defendant to prove his defense based upon the truth and justification of the alleged libelous matter, or that it was published with good motives, beyond a reasonable doubt or by a preponderance of evidence. On the contrary, the burden is upon the state to establish, to the satisfaction of the jury beyond a reasonable doubt, that no such defense exists. In other words, it is incumbent upon the defendant merely to engender in the minds of the jury a reasonable doubt as to his guilt, or the truth of such defensive matter; and if from the whole evidence a reasonable doubt of guilt is entertained by the jury, defendant is entitled to the benefit of such doubt and to an acquittal. But we do not understand that the trial court, in giving his charge in this case violated this rule. On the contrary, after carefully reading and considering the instructions as a whole, we are entirely convinced that such instructions are not vulnerable to attack in this respect. We quote from the instructions as follows: "The jury

are the sole and exclusive judges of all questions of fact in this case, and wherever in this charge the court has stated that any fact must be found established or proved, it means that such fact must be found established or proven to the satisfaction of the jury beyond a reasonable doubt before a conviction can be had."

"The burden of proof in this case at all times is upon the state to prove the truth of the material allegations charged in the information. That is, the state must prove that there was a publication of the matter set out in the information charged to be libelous, and that the same was libelous."

"Should the state prove, to your satisfaction beyond a reasonable doubt, the truth of all the other material allegations charged in the information, but find that the alleged libelous matter was true, then it is incumbent upon the state to prove to your satisfaction beyond a reasonable doubt that the same was not published with good motives and justifiable ends, and if the state does so prove then you should find the defendant guilty. If you have a reasonable doubt as to whether the alleged libelous matter was true or not, then it is incumbent upon the state to prove that the same was not published with good motives and for justifiable ends. If the jury find that the alleged libelous matter was true, but have a reasonable doubt as to whether it was published with good motives and for justifiable ends, then the jury should find the defendant not guilty."

In the light of these instructions we fail to see how appellant has any just cause for complaint. The instructions are clear, and they placed the burden of proof upon the state throughout, and are in harmony with the rule announced in the authorities cited by appellant's counsel.

It is, of course, elementary that the instructions must be considered as a whole, and when this is done we find nothing in the instructions given in this case prejudicial to the rights of defendant.

The contention that the court failed to instruct on certain essential features of the case is, we think, without merit also. The court defined the offense of criminal libel, and clearly stated to the jury what it was incumbent upon the state to prove in order to convict. The fact that the court did not read to the jury the sections of the Code defining the crime is not material. The law of the case was fully and

accurately covered in so far as the substantial rights of defendant are concerned. The jury was explicitly instructed that the state had the burden of proving beyond a reasonable doubt that defendant published or caused to be published the alleged libelous matter charged in the information; that the same was libelous as defined in the instructions; and that the same was false, or if not false, that it was published or caused to be published by defendant as alleged, without good motives or for justifiable ends.

The criticism of the instruction upon which assignment of error number 190 is predicated is not without merit, and were it not for the facts hereinafter stated we would feel impelled to the conclusion that the giving of such instruction was reversible error. The instruction complained of is as follows: "The information in this case charges that it was the intent of the defendant in publishing the alleged libelous matter to charge the said Ambrose Olson with the crime of embezzlement." This allegation was both immaterial and improper, and the court should not have given the above charge. The publication charged was libelous *per se*, whether it charged or did not charge Olson with the crime of embezzlement. The language is plain and there was no need of an innuendo. Defendant admitted that he published the defamatory matter as charged, and the chief issue at the trial was whether as thus published it was true or false, and if true, whether it was published with good motives and for justifiable ends. We are unable to see how, therefore, the giving of such instruction could have been prejudicial. Under the provisions of § 10157, Rev. Codes, it is made the duty of this court on appeals in criminal cases to give judgment without regard to technical errors which do not affect the substantial rights of the parties. We do not think defendant's substantial rights were affected by the error thus complained of. Had such instruction not been given, it is clear, from the record, that the result of the trial must have been the same.

What we have above said regarding assignment number 190 applies also to the next two assignments.

We have considered all of the assignments not herein specially referred to, and find no substantial merit therein. To notice them in detail would extend this opinion to an unwarranted length. The sufficiency of the evidence to sustain the conviction is also challenged,

but we are agreed that the evidence is amply sufficient. The record discloses that appellant was accorded a fair and impartial trial, and that there is no error prejudicial to his substantial rights.

But one other matter will be noticed. Section 9, art. 1, of our Constitution provides that in all civil and criminal trials for libel "the jury shall have the same power of giving a general verdict as in other cases; and in all indictments or information for libels the jury shall have the right to determine the law and the facts under the direction of the court, as in other cases." It is a much mooted question in this state as to the correct meaning of the latter portion of this section, and we are urged by counsel for the state to construe the same with a view of settling the practice in this jurisdiction. We are entirely clear that the construction contended for by the learned state's attorney of Ward county is correct, and that all that was intended by the use of the language quoted was to vest in the jury in such cases the *right* to render a general verdict. It was not the intention to make the jurors the judges of the law, but they are given the right to determine the law merely in the same manner that they do in other cases where a general verdict is returned. In other words, the court is without power in libel cases to require a special verdict to be returned, as the jury is given the right not only to determine the facts, but to apply the law thereto under the direction of the court as in other cases. Section 9991, Rev. Codes, must of course be given the same construction. Section 10042, Rev. Codes, seems to go a step further by depriving the jury of the power to return a special verdict in criminal libel cases. Our Constitution in this respect is like the Constitution of Pennsylvania, § 7, article 1. Mitchell, J., of the supreme court of that state, in a very able and exhaustive opinion in the case of Com. v. McManus, 143 Pa. 64, 14 L.R.A. 89, 21 Atl. 1018, 22 Atl. 761, construed their Constitution and reached the same conclusion as we do. See also the very exhaustive opinion of the Vermont court in State v. Burpee, 65 Vt. 1, 19 L.R.A. 145, 36 Am. St. Rep. 775, 25 Atl. 964, 9 Am. Crim. Rep. 536, overruling the prior case of State v. Croteau, 23 Vt. 14, 54 Am. Dec. 90. The reasoning in these opinions is, to our minds, unanswerable, and it would be both time wasted and presumptuous on the writer's part to attempt to add anything to what is there said. The trial judge, in charging the jury on this point,

evidently followed the recent case of People v. Seeley, 139 Cal. 118, 72 Pac. 834, but it will be found that the California constitutional provision corresponding to § 9 of the North Dakota Constitution is not the same as ours. Theirs reads: "And the jury shall have the right to determine the law and the fact," while ours provides, "The jury shall have the right to determine the law and the facts, *under the direction of the court, as in other cases.*"

Finding no prejudicial error in the record, the judgment and order must be affirmed.