ORTENSIA SARAH FULLER and Myrtie Fuller Henderson, Copartners, as Fuller and Henderson, Respondents, v. ANTON FRIED and Fred O. Fried, Copartners, as Anton Fried & Son, and Individually, Appellants.

(204 N. W. 13.)

**Witnesses — in employ of party incidentally interested not proved by statement contained in letter.**

1. The fact that a witness was in the employ of a party incidentally interested in the litigation may not be proved by the extra-judicial statement of the witness contained in a letter.

**Witnesses — statements in letter not admissible to show bias, absence of foundation by cross-examination.**

2. The deposition of a witness for the defendant was read upon the trial. There was no appearance on behalf the plaintiff and no cross-examination. In rebuttal at the trial the plaintiff offered a letter identified as having been written by the witness, in which the latter had stated that he was employed by a certain company whose product was involved in the litigation and that he could not be a witness for the plaintiff as he had promised. The letter was offered to prove the bias, prejudice or interest of the witness. It is *held:*

Where purported statements of a witness are relied upon as proof of bias, prejudice or interest, they are not admissible, unless a foundation be first laid by cross-examining the witness with reference thereto.

Opinion filed April 6, 1925.    Rehearing denied May 2, 1925.

Evidence, 22 C. J. § 168 p. 209 n. 77.  Witnesses, 40 Cyc. p. 2670 n. 80; p. 2676 n. 16.

Appeal from the District Court of Stutsman County, *Coffey, J.*
Reversed and new trial granted.
*Knauf & Knauf,* for appellants.

One may not change, vary or alter the sacred terms of a written agreement.  Thompson v. McKee, 5 Dak. 176.

"A prior or contemporaneous oral agreement, made by a mortgagee or his agent, that upon payment of two notes the mortgage would be released, is not admissible in evidence when the mortgage provided ab-

Note.—(2) Necessity of laying foundation for evidence showing bias or prejudice of witness, see annotation in 16 A.L.R. 984: 28 R. C. L. 617; 4 R. C. L. Supp. 1831.

solutely that it should be security for four notes." First Nat. Bank v. Prior, 10 N. D. 146, 86 N. W. 362.

"Evidence is inadmissible that notes were delivered on a parol condition that, should the maker of another note, and chattel mortgage, the assignment of which was the consideration for the notes in question, become bankrupt, they should be void.

"Where a note indorsed by responsible persons, and a chattel mortgage securing it, are given in consideration of other notes, consideration for them does not wholly fail, though the maker of the first note and mortgage becomes bankrupt.

"Judgment non obstante veredicto cannot be entered where there is merely a general verdict for the opposite party, and no special verdict inconsistent therewith." Bank v. O'Connor, 94 N. W. 11.

The intent of the parties to a contract is to be governed by the terms of a written contract, when that is possible. The agreement in question and the note are in the common plain, printed, and written language in general use in North Dakota and neither is subject to division, neither is ambiguous, and they are not subject to oral modification or change. Hamey v. Wirtz, 30 N. D. 292, 152 N. W. 803.

*Alymer & Aylmer* and *Carr & Rittgers,* for respondents.

Oral testimony is admissible to show that a written instrument is in reality not a contract between the parties, because of fraud or misrepresentations. Mathias v. State Farmers Mut. Hail Co. (N. D.) 168 N. W. 664.

Failure to read is not fatal when induced not to by other party. Herried v. C. M. & St. P. R. Co. (S. D.) 159 N. W. 1064; Eggleston v. Advance Thresher Co. (Minn.) 104 N. W. 891; Smith v. Kimble (Wis.) 139 N. W. 348.

Not necessary for plaintiffs to reply to defendants' answer and plead fraud when not requestion to so plead. Mathias v. State Farmers Mut. Hail Ins. Co. (N. D.) 168 N. W. 664.

Giving a note does not waive his rights as to warranty under circumstances. Northwestern Cordage Co. v. Rice (N. D.) 67 N. W. 298.

Oral testimony admissible to show breach of implied warranty. Dyer v. Bauer (N. D.) 184 N. W. 809; photo player case. Minneapolis Steel & Machinery Co. v. Casey (N. D.) 201 N. W. 172.

Remedy of purchaser, sue for purchase price. Grewer v. Schaffer (N. D.) 197 N. W. 596.

Induced to keep outfit and try it again is no waiver of rights. State Bank v. Sukut (N. D.) 187 N. W. 960.

Trying outfit after suggestion that a new carburetor might help, is not a waiver. Fox v. Boldt (Wis.) 178 N. W. 467.

Not necessary to lay a foundation on cross examination of a witness for the purpose of showing his hostility to impeach his credibility. State v. Smith (S. D.) 183 N. W. 87.

Proof of letter may be made by proving handwriting or signature. 22 C. J. § 1109, note 79.

BIRDZELL, J. This is an appeal from a judgment in favor of the plaintiffs in an action predicated upon breaches of warranties in the sale of a tractor plowing outfit. There are numerous specifications of error, but, in the view we take of the case, it is necessary to consider but one of them. The essential facts may be stated as follows: In May, 1919 plaintiffs purchased from the defendants a tractor plowing outfit known as a Twin City 16–30 H. P. Oil Tractor with Emerson gang plow and certain other equipment. In connection with the purchase, an order was signed by one J. F. Henderson, one of the plaintiffs, which was written upon a blank of the Minneapolis Steel & Machinery Co. Upon this blank there were printed certain warranties and certain conditions with respect to notice, etc. It is the contention of the plaintiffs that the contract of purchase was made with the defendants and not with the Minneapolis Steel & Machinery Co. and that the order blank of the latter company was used merely for purposes of convenience in describing the property purchased and the terms of payment, and it is the further contention that the warranties are other than those stated in the printed form. The plaintiffs paid $200.00 in cash and after delivery of the tractor gave a note to the partnership, comprising the defendants, for $2450.00. This note was subsequently transferred to a bank and was later paid or renewed by the plaintiffs. It is further claimed by the plaintiffs that they at first refused to execute the note in question on account of the machinery being defective but that they later did so on the assurance by the de-

52 N. D.—33.

fendants that the defects would be remedied and that the plows would be replaced, which substitution would result in a satisfactorily working outfit. Upon the trial there was conflicting evidence as to the manner in which the outfit operated, as to its capacity to do the work for which it was intended in a reasonably satisfactory manner and as to whether or not there were inherent defects which prevented its fulfillment of the warranties. On this subject one of the most important witnesses for the defendants was one Flyum. He testified by deposition in substance as follows: That in the fall of 1919 he worked for the plaintiffs upon their farm and that he ran the tractor in question for plowing; that the only defect he observed was that the shaft of the rotary pump was broken, apparently having been frozen through failure to drain, and, owing to the condition of the pump, the engine would become overheated when working; that the witness told Henderson about it but that the latter said it was all right; that the witness continued to use the tractor though it became overheated from this cause while running; that ultimately Henderson caused a new shaft to be put in, after which it worked good; that there was nothing wrong with the engine; that the plaintiffs did not supply proper fuel for the engine; that the fuel was kept in a tank under conditions that admitted water and dirt and that there was some trouble owing to this fact; that the tractor itself was in good condition and would do good work if properly handled and given proper fuel; that the witness used the tractor for plowing until stopped by cold weather and snow.

There was no appearance on behalf the plaintiff upon the taking of the deposition and no cross-examination. Upon the trial the plaintiff Henderson was called in rebuttal, and, after testifying to his acquaintance with the witness Flyum and to his hearing of the reading of the deposition, he identified a letter as having been written to him by the witness. The letter is as follows:

Billings, Mont., Nov. 10–19.

"Mr. John Henderson,
    Jamestown, N. Dak.
        My dear Sir:
I promised you I would come and be your witness in case you would have a lawsuit with tractor company.

I am going to work for the Minneapolis Steel and Machine Co. so will say I can not come and be your witness.

Respectfully,

Enoch Flyum."

There is objection on the ground that no foundation was laid and that the letter was an unsworn declaration of the witness. The effect of the letter is obviously prejudicial to the defendants and, unless it was properly admitted, a new trial must be awarded. It is contended by the respondents that the letter was not offered for the purpose of impeaching directly the testimony of the witness but, rather, for the purpose of showing the bias, prejudice or interest of the witness, and that when testimony is offered for such a purpose there is no reason for requiring a foundation first to be laid by inquiry of the witness whose testimony is thus sought to be affected. This argument leaves out of consideration two very important elements that are involved in the objections made, namely: that the evidence offered is not the sworn testimony of a witness having knowledge of the facts stated in the declaration or letter; and, second, the element of fairness requiring one who would impeach the testimony of a witness by statements purporting to come from the same source to give the witness and the party affected by the testimony an opportunity to deny or explain the statements.

If it be assumed, though we do not decide, that it was proper to show that the witness was in the employ of the Minneapolis Steel & Machinery Co., whose product is the subject matter of the litigation, the letter was, of course, not competent evidence of that fact. It was a mere unsworn extra-judicial statement which is proscribed by the hearsay rule, and falls within none of its exceptions. Can it, then, be regarded as admissible for the purpose of showing the bias or prejudice of the witness without first giving him an opportunity to affirm or deny its authenticity and to offer his explanation? This depends upon the application of the principle of fairness in the presentation of evidence to the jury. As applied to prior self-contradictory statements, every lawyer is familiar with the rule that the witness must first be asked whether or not he made such statements. "Does the same rule apply to the use of evidence of former utterances of the witness indicating bias? Must the witness first be asked whether he made them?" (2

Wigmore, Ev. § 953.) Professor Wigmore answers this query as follows: "He must, as a matter of principle; for the same reasons of fairness that require a witness to be given an opportunity of denying or explaining away a supposed self-contradictory utterance require him also to have a similar opportunity to deny or explain away a supposed utterance indicating bias. Should force be given to this principle, in spite of the absence of fixed common-law precedent? Under ordinary circumstances, it should be." By way of explaining the policy underlying the rule that requires warning, Wigmore quotes (§ 1025) from Ranney, J., in King v. Wicks, 20 Ohio, 91, as follows:

"To make the truth manifest upon the issues joined between the parties is the object of all evidence. This testimony has no direct bearing upon any disputed fact, but raises a collateral issue upon the credit to be given to a witness, and with all collateral issues, is calculated to divert the minds of the jury from the points in controversy in the case. Such collateral inquiry may and often will become necessary; but it should be avoided where it can be, and I firmly believe it may be avoided in a majority of cases where the inquiry is first made of the witness himself, either by his confessing such contradictory statements or giving such explanations in regard to them as will convince the party that nothing is to be made by pursuing the matter further."

While this was said with reference to prior contradictory statements offered for the purpose of impeachment, we are of the opinion that it is equally applicable to such a statement as that offered in the instant case to prove bias or prejudice, or to show that the obligation of an oath rests so lightly upon the witness that he would throw it to the winds where he conceived it to conflict with some interest of an employer but incidentally affected by the litigation.

A question somewhat akin to that involved in the instant case was presented in the case of State v. Malmberg, 14 N. D. 523, 105 N. W. 614. There this court had under consideration the question as to whether the cross-examination was bound by the statements of a witness denying the existence of motives for falsifying, and it was held that where the inquiry related to matters affecting his credibility as a witness in the specific case rather than his credibility generally, the cross-examiner was not bound but might introduce independent evi-

dence upon the collateral issue. In the opinion of Engerud, J., however, the proper procedure is clearly indicated as follows, page 526, 527 (105 N. W. 616) (Quoting with approval from the case of Fincher v. State, 58 Ala. 215-219):

"The circumstances which affect the particular credit of the witness are generally incapable of proof save by his acts or declarations, and *it is but just that the witness should have his attention directed to them,* and whatever explanation can be given of them without entering into particulars, should be received. . . . If the witness should deny the relationship or bias, it may be proved by other evidence. Declarations in the presence of third persons, indicative of hostility, may be called to the attention of the witness, and he may be required to admit or deny them; if he deny them, the person hearing them, to whom the attention of the witness is directed, may be called to contradict him. How far the bias of the witness, from whatever cause it arises, affects his credibility, is a question for the consideration of the jury, and depends upon his manner of testifying before them, the consistency of his evidence with other evidence in the cause, and the probability of its truth or falsity *when considered in connection with all the facts and circumstances surrounding the parties,* which are parts of the transaction. The law does not discredit the witness because of the bias—it is simply a fact for the consideration of the jury in determining how far they can safely rely on his testimony."

The respondents' counsel rely chiefly upon the case of State v. Smith, 44 S. D. 305, 16 A.L.R. 982, 183 N. W. 873, as an authority for admitting the letter in the instant case. In our opinion there is a clear distinction between the case relied upon and the case at bar. In the South Dakota case one Wright, the complaining witness, was asked concerning some corrupt activities of himself and one Caster, having for their object the procuring of one Martin to give false testimony, and if he (Wright) had not received $50.00 for swearing to the information. This evidence was held admissible although its effect would be to discredit the testimony of Martin who had not been cross-examined as to his hostility or bias against the defendant. It is to be noted that the witness Wright, who was the complaining witness in the criminal prosecution, was nevertheless called as a witness for the defendant and that he was asked concerning his knowledge of the con-

spiracy to procure false testimony from Martin. The potency of the impeachment did not depend upon any extra-judicial, oral or written statement or declaration of Martin. In the instant case the letter relied upon was the letter of the witness sought to be impeached and is wholly inadmissible as original evidence of the main fact of interest, bias or prejudice. It could only become competent when the witness on cross-examination should dispute it or, as a part of his cross-examination, when presented to him for explanation. To hold the letter in the instant case admissible would be to open the door of collateral inquiry so wide as to admit all declarations made by witnesses outside of court concerning their relations with parties affected by the litigation. The evidence being improperly received and its prejudicial effect being obvious, a new trial must be awarded. It is so ordered.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and JOHNSON, JJ., concur.