# FREDERICK C. CASTLE

## *vs.*

## SWIFT & COMPANY.

*Sales of goods*: *without memorandum or payment; acceptance.*

Under the "Sales Act," Article 83, section 25 of the Code, where there is no note or memorandum given for goods purchased, and nothing is paid on account of the same, in order to make the sale binding the purchaser must have accepted at least part of the goods sold and have actually received them.  p. 635

*Decided May 15th, 1918.*

Appeal from the Superior Court of Baltimore City. (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Willis E. Myers,* for the appellant.

*Alfred J. Carr,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The action in this case was brought by the appellee, Swift and Company, to recover the loss sustained by it in the re-sale of eggs claimed to have been sold by it, to the appellant, Frederick C. Castle, and which he refused to take under such alleged sale.

This appeal presents the question whether under the statute known as the "Sales Act" there was a sale of the eggs by the appellee to the appellant that can be legally enforced.

J. Frederick Conrad, salesman for Swift and Company, testified that on Friday night, November the 24th, 1916, the defendant, a dealer in butter and eggs in the City of Baltimore, called the plaintiff over the phone at its Eutaw Market, Baltimore, Maryland, and asked the price of eggs. Witness quoted them to him at thirty-seven cents per dozen, whereupon the defendant first offered thirty-six cents, but finally offered to purchase two hundred cases and to pay therefor thirty-six and one-half cents per dozen, if, as stated by the witness, "I would put them in our upstairs butter cooler and he would order them out as he needed them." The eggs were to be placed in the butter cooler to save him the cost of storage. This offer was accepted, but as Saturday was "a half holiday" the eggs were not put aside for the defendant until Monday, when, as requested by him, they were put in the butter cooler and designated as his eggs. On Tuesday morning the eggs were billed to him. On Wednesday morning the defendant again called the plaintiff over the phone, and Conrad, who answered the phone, was told by him, that "the egg deal was off." Castle assigned as a reason therefor that the plaintiff's Pratt street market, as well as another dealer, had offered eggs to him at a lower price. The plaintiff refused to treat the deal as off, and upon the defendant's refusal to take the eggs and to comply with the terms of said agreement, they were resold by the plaintiff. The sum received therefor being less than the amount at which they had been sold to the defendant at such alleged sale.

Other witnesses testified that the defendant admitted to them that he had bought the eggs, and that he told them that he repudiated the sale for the reason stated by Conrad.

It is also shown by the uncontradicted evidence of the plaintiff that the defendant, prior to the alleged sale, had purchased eggs from the plaintiff on terms similar to those under which Conrad testified the eggs in this case were bought by the defendant, and that the plaintiff had at times extended credit to the defendant to the amount of $2,500 or $3,000, "that is (as stated by plaintiff's credit man) we rec-

ognized it was credit because, although he would buy a couple hundred cases of eggs, or something like that, although he did not take them out at one time, we considered it credit just the same."

The defendant admitted talking to Conrad, the plaintiff's representative, over the phone, but denied that he bought or agreed to buy the eggs, or that he had asked that they be put in the butter cooler for him, but that he asked plaintiff the price of eggs, just as he asked others, to ascertain their price, as he himself had eggs to sell and wished to know their market value.

The "Sales Act" above referred to (Art. 83, sec. 25 of Code 1912) contains the following provisions:

> "A contract to sell or a sale of goods or choses in action of the value of fifty dollars or upward shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

> "The provisions of this section apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time, or may not at the time of such contract or sale be actually made, procured or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery; but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply.

> "There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

At the conclusion of the case the plaintiff offered one prayer which was granted; the defendant offered two, the first was rejected and the second granted.

By the plaintiff's prayer the Court declared as a matter of law that if it, sitting as a jury, should "find from the evidence that the defendant purchased from the plaintiff 200 crates of eggs at thirty-six and half cents per dozen, and that said eggs were to be placed in the plaintiff's butter cooler so as to save the defendant the cost of storage, and it was a part of the agreement that upon said eggs being so placed, and an invoice sent for the same, the defendant was to pay for the same. Then the placing of said eggs in said butter cooler and the sending of said invoice vested the title to the said eggs in the defendant.

And if it shall further find that the plaintiff requested payment for the eggs which was not complied with, and further, that the plaintiff notified the defendant that unless he paid for the eggs the same would be sold at his risk, and conformity with such notice the plaintiff did sell at the risk of the defendant said 200 crates of eggs, and advised him of the loss resulting therefrom, and requested payment of such loss, that said request was not complied with, then the verdict should be for the plaintiff for such sum as the Court shall find, from the evidence, was the actual loss of the plaintiff, with interest in the discretion of the judge."

It is conceded that there was nothing given in earnest to bind the contract, or in part payment of the purchase money for the eggs said to have been bought by the defendant, and that there was no note or memorandum in writing of the contract or sale signed as required by the statute; consequently, in order to hold the contract or sale binding and enforceable against the defendant, the alleged buyer, it must be shown that he accepted at least a part of the eggs contracted to be sold or sold and that he actually received the same. Therefore, in this case we are concerned only in the meaning of the statute in respect to the provisions requiring acceptance and receipt by the buyer of the goods sold.

It is clear that the terms of the statute require two distinct acts on the part of the vendee; he must accept, and he must actually receive a part of the goods in order to render the contract binding on him. There may be an actual receipt without any acceptance, and there may be an acceptance without any receipt. An acceptance may precede or follow the recepit, or it may be contemporaneous therewith; and at times even a receipt may be evidence of acceptance, but it is not the same thing. *Hewes and Company* v. *Jordan,* 39 Md. 472.

As defined by the statute (section 25) there is an acceptance of the goods "when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to become the owner of those specific goods;" by section 69 of the same article he "is deemed to have accepted the goods when he intimates to the seller that he has accepted them."

In *Williston on Sales,* sec. 483, it is said: "The ways of manifesting acceptance may be reduced to the three enumerated in the section of the Sales Act under consideration, namely: (1) Intimation of acceptance. (2) Exercising acts of ownership. (3) Retaining the goods. Under the first head will be included both cases where the buyer receives goods and expresses his aceptance of them; and also cases where by the terms of the bargain the buyer agreed to accept goods, whether specified at the time of the bargain or to be afterwards selected by the seller, without inspection."

All cases admit that the term "actually receive" found in the statute means the acquisition of possession by the buyer, and whatever difficulties exist in regard to its meaning are largely due to the inherent difficulty of determining what is, in fact, possession. This Court, however, has said, speaking through JUDGE ALVEY, that "the receipt of part of the goods is the taking possession of them. When the seller gives to the buyer the actual control of the goods and the buyer accepts such control he has actually received them." *Hewes and Company* v. *Jordon, supra.* It is said, however, upon

good authority that goods may be received by the buyer within the meaning of the statute and yet allowed to remain in the hands of the vendor, if it be shown that the seller has ceased to hold in the character of unpaid vendor and holds wholly as bailee for the buyer. *Williston on Sales,* sec. 91, and the numerous cases cited in note thereto.

In this case we think there is evidence of both acceptance and actual receipt of the goods which should be submitted as a question of fact to the jury under proper instructions of the Court, thus, we find no error in the ruling of the Court in its rejection of the defendant's first prayer asking that the case be taken from the jury.

But the Court in our opinion erred in granting the plaintiff's prayer in which it is said that if it be disclosed by the evidence that the defendant purchased the eggs at the price named, and the same were to be placed in the butter cooler to save him storage, and that upon the eggs being placed therein and an invoice sent to him he was to pay for the eggs, then the placing of the eggs in the butter cooler under such circumstances vested the title to said eggs in the defendant.

This prayer fails to recognize, or at least within sufficient clearness, the essential requirements of the actual receipt of the goods by the buyer and the intention of the parties as to the same. It was not only necessary to find that the eggs were placed in the butter cooler but, it was also to be found that by so doing the unrestricted control of the eggs passed to the buyer and that such was the intention of the parties.

There is also found in record an exception to the evidence. If this evidence was wrongfully admitted there was no injury to the defendant caused thereby, as the same fact was testified to by another witness to which no exceptions were taken and which stands uncontradicted.

Because of the error of the Court in granting the plaintiff's prayer, the judgment of the Court below will be reversed.

> *Judgment reversed and new trial awarded with costs to the appellant.*