# LOUIS BERMAN ET AL.

## vs.

## LUCIUS N. LITTAUER ET AL.

*Sale of Goods—Acceptance—Breach of Warranty—Recoupment—Partnership Contract.*

It is no defense to an action by partners on a contract with the partnership that, after the making of the contract, the partnership business was taken over by a corporation, it not appearing that the claim under the contract was ever assigned by the partners.      p. 653

The receipt and acceptance of material sold take the case out of the Statute of Frauds.      p. 653

In an action for the price of material sold, an instruction that the buyer's failure to return or offer to return the material within a reasonable time after its delivery renders him liable for the full purchase price regardless of whether it conformed to sample, is in conflict with Code, art. 83, sec. 70, providing that if, after acceptance, the buyer fails to give notice of the breach of any promise or warranty within a reasonable time after he knows or ought to know of the breach, the seller shall not be liable therefor.      pp. 654, 655

If the seller is notified of a breach of warranty within a reasonable time after acceptance of the goods, and if in fact the goods do not conform to the samples, the buyer is, under Code, art. 83, sec. 90, subsec. 1a, entitled to "accept or keep the goods and set up against the seller the breach of warranty by way of recoupment."      p. 655

A prayer which incorrectly states the law independently of the evidence cannot be regarded as correctly stating the law in relation to the evidence.      p. 655

A prayer telling the jury that the burden was on plaintiffs to show that the material delivered corresponded with the sample, and that if it did not come up to the warranties, the

verdict should be for the defendants, is in conflict with a prayer telling the jury that if defendants received and accepted the material, and did not return or offer to return it, plaintiffs were entitled to recover regardless of any breach of warranty.
p. 656

That defendant purchasers sought to repudiate the contract of sale in suit, and not to recoup for breach of warranty, does not preclude them from asserting that they were injured by the omission from a granted prayer of any reference to their right to recoup.                                                    p. 656

The buyers of goods are not estopped to assert the right of recoupment for breach of warranty, merely because they thought that their return of the goods was a repudiation of the contract of sale, while it was in law not a repudiation but an acceptance.
p. 657

*Decided November 17th, 1922.*

Appeal from the Superior Court of Baltimore City (DOBLER, J.).

Action by Lucius N. Littauer and Eugene Littauer, co-partners, trading as Littauer Brothers, against Louis Berman and Jacob B. Kadis, co-partners, trading as the Federal Bargain House, for the purchase price of goods sold. From a judgment for plaintiffs, defendants appeal. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Clifton S. Brown,* with whom was *Benjamin Beck* on the brief, for the appellants.

*William L. All,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The appellees, who are glove manufacturers of New York City, in November, 1919, orally contracted to sell to Louis Berman and Jacob B. Kadis, trading as the Federal Bargain House of Baltimore, a lot of gloves to correspond with certain samples shown the purchasers at the time the contract was made. The gloves were shipped in the following July to the "Federal Bargain House" at 37 Hopkins Place, Baltimore, Maryland, where the buyers appear to have been engaged in the jobbing business at the time they ordered the gloves. When the gloves arrived in Baltimore the appellants were no longer at 37 Hopkins Place, which had become untenantable as a result of a fire, but were located at 713 Light Street. The gloves were sent to the Hopkins Place address for delivery, and finding neither the consignees nor any one representing them at that address, the gloves were placed by the carrier in its warehouse, and notice of their arrival, addressed to the consignees at Hopkins Place, sent, and inquiries made to ascertain their new location. In the latter part of August, 1920, the appellants having learned of their presence there, removed the gloves from the warehouse to their place of business and inspected them, and, as a result of their inspection, they on August 31, 1920, wrote the appellees this letter:

"Your shipment of July 8th reached us a few days ago, same having been placed in storage by the Baltimore & Ohio R. R. Co., without our knowledge. We did not receive notice of arrival.

"The cases were opened by us today, and we find that we will not be able to use the gloves at any price. You have cut your sizes so small that we could only sell the gloves as boys' sizes. We ordered the goods at your regular prices and are entitled to first quality goods and full men's sizes. We do not intend to ruin our trade with merchandise that is not worth handling. We enclose herewith bill of lading to cover the shipment of three cases.

"This is the first season that we have dealt with
you, and we are sorely disappointed. If we had
bought a job lot from you we would know what to
expect, but we ordered your regular goods, and do
not intend to accept anything but merchandise that
we can handle at a profit and hold our trade."

To that letter the appellees replied that the goods corre-
sponded with the samples and returned the bill of lading.
The appellants again wrote the appellees a letter in which
among other things they said:

"We again enclose herewith B. & O. R. R. bill of
lading dated August 31st, covering the three cases of
gloves. Please do not be under the impression that
we are going to be intimidated because you refuse to
accept the shipment. You did not ship us the gloves
which we ordered. The samples are full size and the
make is uniform, but you shipped us three cases of the
worst and the commonest gloves we have ever seen."

This letter, as it appears in the record, bears the date
October 2, but that is apparently an error, for the record
speaks also of a letter written by the appellees dated Septem-
ber 13th, 1920, as a "response" to the letter dated "October
2d." In this last letter the appellants were notified that
the carrier had placed the gloves in storage in New York.
On October 25th, 1920, the appellees sued the appellants in
an action of assumpsit in the Superior Court of Baltimore
City for the purchase price of the gloves. The case was in
due course tried before a jury, and a verdict returned and
judgment thereon entered for the plaintiffs for $1,293.75,
and from that judgment this appeal was taken.

The record contains two exceptions, one of which relates
to the court's action in overruling a motion to "non suit" the
plaintiff, and the other of which relates to the court's rulings
upon the prayers.

The point involved in the first exception is that, because
the business of the plaintiffs was, before this suit, taken over

by a corporation, that they could not sue upon a partnership claim existing at the time the corporation succeeded to their business.

Assuming, without deciding, that the question is before us for review, we find no error in the ruling involved in the first exception. The record does not show that the partnership of Littauer Brothers was ever dissolved, or (2) that the claim sued on here was ever assigned by the partners to any other person. But even if the partnership had been actually dissolved, it, nevertheless, would not have terminated until the winding up of the partnership affairs had been completed, (article 73 A, Code Pub. Gen. Laws of Maryland, section 39), and the partners were as much entitled to sue on the claim in this case after the incorporation of the new company as before, even if that could be regarded as a dissolution of the partnership. 2 *Rowley on Partnership,* sec. 834.

The plaintiffs offered one prayer which the court granted, and the defendants six prayers, of which the court granted the second, fifth and sixth and refused the others. The defendants' first prayer raised the same question which we have disposed of under the first exception and was properly refused. The defendants' third prayer was bad because it entirely ignored the evidence offered by the plaintiffs, tending to show that the defendants received and accepted the goods, and having accepted them, failed within a reasonable time to return them or notify the seller of any breach of warranty, and it was properly refused. The defendants' fourth prayer is a demurrer to the evidence, and in connection with it some reference was made to the Statute of Frauds, as affecting the plaintiffs' right to recover, but that contention is without substantial merit, because there is in the case evidence that the goods were received and accepted by the defendants, and if they were received and accepted, such receipt and acceptance took them out of the statute. *Castle* v. *Swift & Co.,* 132 Md. 634.

By granting the plaintiffs' first prayer the court instructed the jury "that it was the duty of the defendants to accept

and pay for the material ordered from the plaintiffs, or return it within a reasonable time after a delivery was tendered or notice of arrival received; and that a failure to return or an offer to return the material within such reasonable time would render the defendant liable to the plaintiffs for the full purchase price regardless of whether or not the material conformed to sample; and further that the question of reasonable time within which the defendants might have returned the material not conforming to sample should be decided by the jury from all the surrounding facts and circumstances attendant to the sale." And by granting the three prayers of the defendants, it gave these instructions to the jury: "that the burden of proof rests upon the plaintiffs to show that the goods in question corresponded with the samples submitted to the defendants," and "that after the delivery of the goods in question, they the said defendants had the right to inspect said goods and if the jury shall believe that said defendants upon said inspection found said goods did not correspond with the samples and did not come up to the warranties made by the plaintiffs, then their verdict should be for the defendants," and "that if the jury shall find that the defendants purchased certain goods from the plaintiffs by samples, that said defendants had the right to inspect the goods in question to see if they corresponded with said samples, and further that said defendants were not bound to accept the goods in question if same did not correspond."

As a result of these rulings the following questions are presented: Did the plaintiffs' first prayer correctly state the law applicable to the case, and, if not, was the error corrected by the granted prayers of the defendants, and if it was not, was the error harmless?

The plaintiffs' first prayer does not, in our opinion, correctly state the legal principles applicable to the facts to which it related. In stating that it was the duty of the defendants to accept and pay for the material ordered "or return it or offer to return it within a reasonable time after

delivery was tendered or notice of arrival received; and that a failure to return or an offer to return the material within such reasonable time would render the defendants liable to the plaintiffs for the full purchase price regardless of whether or not the material conformed to sample," it is in conflict with that part of section 70 of article 83, Code Pub. Gen. Laws of Maryland which provides: "But if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor," and made the buyers responsible for the whole contract price if they accepted the material, notwithstanding there was evidence in the case from which the jury may have found (a) that the seller was notified, within a reasonable time after acceptance, of a breach of warranty, and (b) that the goods did not conform to the samples. If, in fact, the sellers were so notified, and if in fact the goods did not conform to the samples but were of inferior quality, then the sellers were not entitled to recover the full contract price of the material, but on the contrary the buyer was entitled under such circumstances to "accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price." Article 83, section 90, sub-section 1 a, Code Pub. Gen. Laws of Maryland; *International Motor Co.* v. *Oldfield,* 134 Md. 207; *Carlin* v. *Biddison,* 135 Md. 458. See also cases collected in *Terry, Uniform State Laws,* 242 *et seq.*

The appellees, while they do not contend that this prayer correctly stated the law independently of the evidence in this case, nevertheless contend that it does correctly state the law in relation to that evidence. That proposition is, so far as we are informed, without authority and can hardly be seriously considered. The law does not change with every new combination of facts to which it can be applied, but is fixed, definite and certain, and while the manner of its appli-

cation changes with differing facts its principles and rules remain invariable.

They further defend the prayer on the ground that, while it may not correctly state the law, that error is corrected by the defendants' granted prayers. The defendants' prayers do not supplement and aid the plaintiffs' prayer, but are in direct conflict with it.

By the defendants' prayers the jury were told that the burden of proof was upon the plaintiffs to prove that the material delivered corresponded with the samples and if, upon inspection, it was found that it did not come up to the warranties, their verdict should be for the defendants, while in the plaintiffs' prayer they were told that if the defendants received and accepted the material and did not return or offer to return it, the plaintiffs were entitled to recover regardless of any breach of warranty. Not only are the prayers thus in conflict, but there is nothing in the defendants' prayers to supply the omission from the plaintiff's prayer of any reference to the defendants' right to recoup if they notified the plaintiffs of the breach of warranty, and if the material was of inferior quality. We may in speaking of these prayers adopt a phrase used by CHIEF JUDGE BOYD in *Wash., B. & A. R. Co.* v. *State,* 136 Md. 115, that "the jury could not without disregarding one or the other come to any correct conclusion."

It was further contended that, since the defendants sought repudiation of the contract and not recoupment, they were not injured by the omission from the prayer of any reference to defendants' right to recoup, and it cites *Loeblein* v. *Clements* in support of that view. But whether or not the defendants should be permitted to recoup in a given case does not necessarily depend upon any construction which the parties may place upon the facts themselves, when considered in connection with the legal principles controlling them, and while generally either party may of course by appropriate action surrender or waive any right in the case, he will not be

presumed to have done so merely because he failed to correctly interpret the facts of the case, and that was what was decided by the case of *Loeblein* v. *Clements,* 130 Md. 627. The decision in that case rested upon the proposition that the evidence conclusively showed that the material was accepted and that there was no evidence to support recoupment.

In this case there is evidence (a) that the sellers were notified of the breach of warranty, and (b) that the material was wholly unsalable, could not be sold at any price and was not worth handling, that the leather in the goods was entirely broken and cut and the sizes not full, but there is nothing to be found in the record which indicates that the defendants intended to surrender or waive their right to recoup. It is true that the defendants did what they appear to have thought was a repudiation of the contract in returning the goods, but if what they did was in law not a repudiation but an acceptance, in the absence of any evidence showing that they intended to surrender or waive any rights accruing to them by reason of such acceptance in connection with the notice given by them to the plaintiffs of an alleged breach of warranty, we will not assume as a matter of law that they were in any way estopped or excluded from the benefit of the defence of recoupment in this case. *Castle* v. *Swift,* 132 Md. 635.

That the jury had not before them opinion evidence as to the monetary valuation of the material as delivered does not affect that conclusion, since they had before them the contract price and a description of the kind and condition of the material ordered, when it was delivered, from which they could have estimated its value.

We are, for the reasons we have stated, of the opinion that there was harmful error in granting the plaintiffs' prayer, and the judgment appealed from must be reversed and the case remanded for a new trial.

> *Judgment reversed with costs to the appellants, and a new trial awarded.*