ORTENTIA SARAH FULLER and Myrtle Fuller Henderson, Co-partners, as Fuller & Henderson, Respondents, v. ANTON FRIED and Fred O. Fried, Copartners, as Anton Fried & Son, and Individually, Appellants.

(224 N. W. 668.)

Opinion filed August 6, 1928. Rehearing denied April 6, 1929.

*Knauf & Knauf,* for appellants.

*Aylmer & Aylmer* and *Carr & Rittgers,* for respondents.

CHRISTIANSON, J. This is an action brought by the buyer of a tractor outfit to recover the purchase price because of an alleged breach of warranty by the seller. The case was tried to a jury and resulted in a verdict in favor of the plaintiffs. Defendants moved for judgment notwithstanding the verdict or for a new trial. The motion was denied and the defendants have appealed from the judgment and from the order denying such motion.

The plaintiffs own and operate a large farm in Stutsman county in this state. The defendants are machinery dealers having, among others, a place of business at Spiritwood in Stutsman county. The evidence shows that some discussion was had between J. F. Henderson, representative of the plaintiffs and manager of their farm, and Fred Fried, a member of the defendant firm, with respect to the purchase by the plaintiffs of a tractor and plows, with the result that on May 3, 1919 Henderson signed a written order wherein the plaintiffs ordered the following machinery:

"One Twin City 16–30 H. P. Oil Tractor, 4 Bottom Emerson Engine Gang Complete with Extra shears 3–14 inch breaking Bottoms and Extra shears, Steering Device, Extension Rims, and 4 Bottom Packer," and agreed to pay therefor $2,650 F. O. B. cars, the Minneapolis Steel & Machinery Company's plant at Minneapolis, Minnesota. The written order was upon a printed blank prepared by the Minneapolis Steel & Machinery Company and intended for use in ordering machinery from that company.

The first question presented on this appeal relates to such written order. It is undisputed that the order was signed by the authorized

representative of the plaintiffs; but it is denied that such order constituted the contract between the parties. Henderson, the representative of the plaintiffs, testified that when the order was presented to him he refused to sign it saying that he would not buy the machinery from the Minneapolis Steel & Machinery Company; that whatever purchase he made he would make from the defendants, Anton Fried & Son; that he was then informed by Fred Fried that the order was used merely as a memorandum giving a description of the machinery purchased and the price to be paid and was intended for no other purpose whatsoever; that Fried & Son did not have an order blank of their own, and that consequently they used this blank as a memorandum of the machinery purchased and the price to be paid therefor. The defendant, Fred Fried, on the other hand, testified that no such conversation took place; that the order was taken without any such understanding and that it embodied the contract between the plaintiffs, as the buyers, and the Minneapolis Steel & Machinery Company, as the sellers, and that Anton Fried & Son acted merely as agents of the latter in obtaining and forwarding the order.

A large number of the assignments of error are directed at the rulings of the court in admitting the evidence offered by the plaintiffs tending to show that the written order was not in fact a contract of purchase; that the plaintiffs had never contracted with the Minneapolis Steel & Machinery Company; that they had contracted alone with Anton Fried & Son and that the signature of the plaintiffs had been affixed to the contract in the circumstances stated and with the understanding and belief on their part that it was not a contract at all and that it merely contained a description of the machinery and the price to be paid; that the plaintiffs had no intention, no desire and no willingness to enter into a contract with the Minneapolis Steel & Machinery Company and would not have so contracted. This evidence was objected to by the defendants on the ground that it tended to vary, change and contradict the written instrument, and error is assigned upon the rulings of the court, overruling such objections.

We are wholly agreed that no error was committed in such rulings. The evidence in question did not seek to contradict, vary or change the terms of a written contract. It went to the very existence of a contract between the plaintiffs and the defendants and was offered and

received upon the question whether the alleged written contract between the plaintiffs and the Minneapolis Steel & Machinery Company did or did not exist as the only contract. The plaintiffs did not rely upon or seek to recover under the written contract. They denied that the alleged written contract had any legal existence whatsoever. The plaintiffs claimed, and the evidence adduced in their behalf tended to show, that they had no intention to enter into a contract with the Minneapolis Steel & Machinery Company and that they never did enter into any such contract. In short, that there was no meeting of the minds of the parties to such alleged contract at all. The Minneapolis Steel & Machinery Company was not a party to the action and the defendant firm was not a party to the alleged written contract. In these circumstances the rule "excluding parol evidence tending to vary, modify or contradict the writing" does not apply. 3 Jones, Ev. 2d ed. § 1488. See also 2 Williston, Contr. § 647.

We are of the opinion, therefore, that the court was entirely correct in admitting the evidence adduced by the plaintiffs tending to show that the alleged written contract was not in fact a legal contract; that plaintiffs did not purchase the machinery from the Minneapolis Steel & Machinery Company under such contract but purchased the same from the defendants under another and oral contract; and, under the evidence, it was, we think, clearly a question of fact for the jury whether the plaintiffs purchased the machinery from the Minneapolis Steel & Machinery Company under the written contract, or whether they purchased it from the defendants under the oral contract.

The evidence adduced by the plaintiffs was further substantially to the effect that the plaintiffs purchased the machinery from the defendants under an oral contract; that the defendants had been informed and knew that plaintiffs purchased the machinery for use on their farm in Stutsman county; that the defendants had knowledge of the condition of the soil and the character of such farm and in general knew the kind of work the machine was intended to perform; that defendants represented and warranted that the tractor would pull a certain number of plows and a packer on said land at a certain rate of speed; that the tractor and plows wholly failed to do the work which defendants had represented and warranted that they would do. We

deem it unnecessary to enter into any detailed statement of the alleged warranty and the alleged breach thereof; but we are all agreed that the evidence on this phase of the case is such as to make it a question of fact for the jury to determine whether the warranty was made and whether there was a breach thereof.

It is contended by the defendants, however, that the plaintiffs did not offer to return the tractor within a reasonable time after knowledge of the breach of warranty, or at all; and that, consequently, no rescission was effected. The evidence shows that on October 23, 1919, the plaintiffs sent defendants a written notice to the effect that inasmuch as the outfit did not do the work defendants had represented it would do the plaintiffs "hereby offer to return . . . the whole outfit and demand from you the principal sum of $2,450." The evidence further shows that at the time this letter was written the tractor was in a machine shed on plaintiffs' farm and that it remained in such shed during the winter of 1919–1920. According to the evidence adduced by the plaintiffs they received no response to the notice of rescission and offer to return the outfit. Plaintiffs' manager testified that after writing the letter he saw Fred Fried and made settlement for certain machinery and supplies purchased from the defendant firm, but refused to pay the items in such bill for repairs furnished for the tractor. Plaintiffs' manager testified positively that the defendants at no time after the notice of rescission made any suggestion or offer of adjustment or compromise. The undisputed evidence further shows that in the spring of 1920 the plaintiffs again used the tractor in seeding,—seeding in all some one hundred seventy acres; they plowed some twenty or thirty acres with it; that they used it in the harvest of 1920 and later used it to haul some grain to market. As to the reasons why he attempted to use the tractor again in 1920, plaintiffs' manager testified:

Q. How did you come to try this tractor again in 1920?

A. Well, I was down to Fargo. I don't just remember whether it was in the fall or in the spring of 1919 or 1920. I would not say, and when I was there I went and had a talk with Mr. Austin, I think his name is, manager of the Minneapolis Steel & Machinery Company— the Fargo branch manager. I had a talk with him and he said—. . .

I went to the Minneapolis Steel & Machinery Company and during the conversation—I took out a new carburetor, which was supposed to be a new make of carburetor for this engine that would burn gasoline instead of kerosene, which was made to improve this engine—. . .

Q. And did you get that as a result of somebody's suggestion or recommendation? . . .

A. I got it as the result of the recommendation of the Manager of the Minneapolis Steel & Machinery Company. . . .

Q. Now we come to the spring of 1920 when you say you had secured a new carburetor at somebody's suggestion, that it might work on the tractor, and you took the tractor out and tried it again. Up to that date you had not secured any settlement or adjustment with Anton Fried & Son?

A. None, whatsoever. . . .

Plaintiffs' manager further testified that after the new carburetor had been put on, the tractor was used in drilling in some grain. According to his testimony it did not perform the work in a very satisfactory manner although he seeded in all some one hundred seventy acres with it. He further testified in response to questions propounded by plaintiffs' counsel:

Q. Did you make any effort to try it on any other kind of work after that?

A. Yes.

Q. What else and when and where?

A. About twenty or thirty acres of plowing on section twenty-three northwest of town. I put another man on there and sent him up town to see if he could plow that out with it and he hooked on to the plow. We hooked one of the plows up and just used three plows on there. There was an expert out there that time. I had one come myself that was out there.

Q. Why was this man out there?

A. A gear busted out. The main drive pinion busted. I sent for the main drive pinion to Fargo and told them to send out an expert to put it on. . . .

A. I got tired monkeying with Fried. If I would telephone him I would not know when the things were coming or anything about it.

It will be noted that the plaintiffs put the machinery to considerable use after the notice of rescission. Obviously such use was inconsistent with the declared purpose of such notice. If the contract was rescinded the machinery no longer belonged to the plaintiffs and they had no more right to use it than any other machinery belonging to someone else. There is nothing to indicate that the subsequent use was at the suggestion of the defendants. It will be recalled that on a trip to Fargo plaintiffs' manager conferred with the manager of the Minneapolis Steel & Machinery Company at that place, and it was at his suggestion and not at the suggestion of the defendants that plaintiffs' manager obtained a new carburetor. According to the contention of the plaintiffs, however, they bought the machinery from the defendants and not from the Minneapolis Steel & Machinery Company and there was not the slightest showing that the manager of that company had any authority to represent the defendants. Hence, under the evidence in this case we fail to find any basis for a holding that plaintiffs' use of the machinery in 1920 was brought about by the inducement or request of the defendants. We are of the opinion, therefore, that the plaintiff has failed to show a rescission. "Rescission means the undoing of the contract, the making of it as if it had never been." 2 Black, Rescission & Cancelation, § 616. "Hence the first and prime essential of rescission is the 'restitutio in integrum,' that is, the restoration of each of the parties to the position, with reference to his property and his rights, which he occupied immediately before the making of the contract. . . . It is said: 'The rule that he who seeks to rescind a contract of sale must first offer to return the property received, and place the other party in the position he formerly occupied, so far as practicable, prevails equally at the civil and the common law. It is a rule founded in natural justice and requires that the offer shall be made by the purchaser to his vendor upon the discovery of the defects for which the rescission is asked.' " 2 Black, Rescission & Cancelation, § 616. The principle thus stated is recognized and prescribed by our statutes relating to contracts of sale.

Sec. 69, chapter 202, Laws 1917 (§ 6002a69; Supplement to the 1913 Compiled Laws) provides:

"Where there is a breach of warranty by the seller, the buyer may, at his election—

"(a) Accept or keep the goods and set up against the seller, the breach of warranty by way of recoupment in diminution or extinction of the price;

"(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty;

"(c) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty;

"(d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid.

"(2) When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted.

"(3) Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale. . . .

"(7) In the case of breach of warranty of quality, such loss in the absence of special circumstances showing the proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

In this case there was no return or offer to return the property as required by the statute. The alleged notice of rescission served in October 1919 was waived by the subsequent conduct of the plaintiffs.

The use of the property in 1920 was inconsistent with the declared intention to rescind, and nullified the effect of the attempted rescission. 2 Williston, Sales, 2d ed. § 611, p. 1533; Scriven v. Hecht (C. C. A. 2d) 287 Fed. 853; Maples v. Douglass, 205 Ala. 94, 87 So. 585; J. B. Alfree Mfg. Co. v. Grape, 59 Neb. 777, 82 N. W. 11; Gorman-Head Auto Co. v. Barrett, 78 Okla. 34, 188 Pac. 1083; Learned v. Hamburger, 245 Mass. 461, 139 N. E. 641; Pleak v. Marks, 171 Iowa, 551, 152 N. W. 63; Underwood v. Wolf, 131 Ill. 425, 19 Am. St. Rep. 40, 23 N. E. 598. See also J. L. Owens Co. v. Doughty, 16 N. D. 10, 110 N. W. 78; Allis-Chalmers Mfg. Co. v. Frank, ante, 295, 221 N. W. 75.

We are agreed that under the facts in this case, the plaintiffs are not entitled to recover, and will not be entitled to recover upon another trial, as upon rescission of the contract unless the defendants are willing to acquiesce in a rescission; that under the complaint and the proof plaintiff's remedy is an action for damages for breach of warranty. While under the Sales Act the buyer has an election of remedy and where one remedy has been claimed and granted he may not afterwards have another, the evidence in this case shows that the remedy of rescission was unavailing when the action was instituted, unless the defendants acquiesced in the rescission. The evidence also shows that the purchase price had been fully paid either in cash or by negotiable note and that such note had been negotiated before maturity to a purchaser for value. Consequently, at the time of the institution of the action the only remedy actually available to the plaintiffs was a suit against the sellers for damages for the breach of warranty. Hence, plaintiffs have not claimed "and been granted" a remedy; and we are of the opinion that the ends of justice require that the plaintiffs be permitted, if they so desire, upon such terms as may be just, to file an amended complaint asking relief by way of damages for breach of warranty. Gorman-Head Auto Co. v. Barrett, 78 Okla. 34, 188 Pac. 1083. See also Allis-Chalmers Mfg. Co. v. Frank, supra.

In event of such amendment, however, plaintiff should be restricted to damages measured by the difference between the actual value of the property and what would have been its value if it had been as warranted.

The judgment appealed from must be and the same is reversed and

the cause is remanded for further proceedings not inconsistent with this opinion.

BURKE, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.

## On Petition for Rehearing.

CHRISTIANSON, J. Defendants petition for a rehearing.

It is first contended that this court should hold as a matter of law that the contract in suit is one between the plaintiffs and the Minneapolis Steel & Machinery Company; and that, consequently, the plaintiffs can in no event recover against the defendants. It is said that inasmuch as the plaintiffs dealt directly with the branch agent of the Minneapolis Steel & Machinery Company in obtaining repairs for the machinery, they in effect recognized the contract as being one with the company and "ratified, renewed and re-established their signed contractual agreement with the Minneapolis Steel & Machinery Company, and . . . ought to be bounden thereby, and thus wholly precluded from claim against the defendants."

In our opinion the contention thus advanced is not well founded. As indicated in the former opinion one of the principal questions of fact in this case is whether the contract is one between the plaintiffs and the defendants or one between the plaintiffs and the Minneapolis Steel & Machinery Company. In our opinion the evidence relating to the plaintiffs obtaining repairs directly from the manufacturers did not have the effect contended for by the appellants. The evidence does not establish that these parts were furnished or received in fulfillment of any provision of the alleged contract; and according to the evidence adduced by the plaintiffs they ordered such repairs directly from the manufacturers owing to inability to get them promptly from the defendants. We are wholly agreed that this evidence did not establish as a matter of law that the contract was one between the plaintiffs and the Minneapolis Steel & Machinery Company.

It is next contended that inasmuch as the plaintiffs declared the contract to be rescinded and sought to avail themselves of the remedy of rescission, they irrevocably elected such remedy and are precluded from the alternative remedy of affirming the contract and recovering damages for the breach of warranty.

It is doubtless true, as appellants urge, that ordinarily an election of remedy once made is irrevocable. This is equally true under the Sales Act; but the very idea of an election presupposes that at the time the election was made there did actually exist two or more inconsistent remedies.

Corpus Juris (20 C. J. pp. 21–24) says:

"An election can exist only where there is a choice between two or more inconsistent remedies actually existing at the time the election is made. Hence the fact that a party misconceives his right, or through mistake attempts to exercise a right to which he is not entitled, or prosecutes an action based upon a remedial right which he erroneously supposes he has, and is defeated because of such error, does not constitute a conclusive election, and does not preclude him from thereafter prosecuting an action based upon an inconsistent remedial right."

Ruling Case Law (9 R. C. L. pp. 956, 957) says:

"An election of remedies is defined as the choosing between two or more different and coexisting modes of procedure and relief allowed by law on the same state of facts. On this question the language of the Scottish law is sometimes used, that a man shall not be allowed to approbate and reprobate. If a person has a choice of remedies he may elect; but there can be no election between causes of action, unless two causes of action exist and they are inconsistent. And so where a suit is on an alleged cause of action that does not in fact exist, there cannot be, as to such, an election of remedies."

The test for determining whether a party by the election of one remedy has become precluded from invoking another is whether he "had the two forms of remedy. If he did not, there was no chance for an election. A party cannot choose a remedy which he does not have." Whipple v. Stephens, 25 R. I. 563, 564, 57 Atl. 375. See also Wells v. Western U. Teleg. Co. 144 Iowa, 605, 614, 24 L.R.A. (N.S.) 1045, 138 Am. St. Rep. 317, 123 N. W. 371; Henry v. Herrington, 193 N. Y. 218, 223, 20 L.R.A.(N.S.) 249, 86 N. E. 29; 27 C. J. p. 18.

This principle is expressly recognized in the Sales Act. It is only when a buyer "has claimed *and been granted*" one of the remedies afforded for a breach of warranty by the seller, that he is precluded from invoking another. Laws 1917, chap. 202, § 69 (2). Where

he claims a remedy which he does not have (as the buyers did in this case) he is not precluded from invoking thereafter some remedy which he does have. Urdang v. Posner, 220 App. Div. 609, 222 N. Y. Supp. 396; Berman v. Littauer, 141 Md. 649, 119 Atl. 565; 2 Williston, Sales, 2d ed. pp. 1536, 1537. See also Rice v. Friend Bros. Co. 179 Iowa, 355, 161 N. W. 310; Gorman-Head Auto Co. v. Barrett, 78 Okla. 34, 188 Pac. 1083; Clark v. Kirby, 243 N. Y. 295, 153 N. E. 79; Goldman v. Great Lakes Foundry Co. 230 Mich. 524, 203 N. W. 103.

Williston (2 Williston on Sales, 2d ed. pp. 1536, 1537) says:

"It seems to be generally assumed that where a buyer has free choice of remedies for breach of warranty, if he elects the remedy of rescission he is thereby precluded from bringing an action for damages and it has been so decided. . . . Under the Sales Act it is clear that the buyer can have but a single remedy for breach of warranty. An attempt to rescind, however, which is ineffectual e. g. because not sufficiently prompt will not preclude the allowance of other remedies."

By the express terms of the Sales Act the remedy of rescission remains available only in certain circumstances. The act provides:

"Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale." § 6002a69, subdv. 3, Supp. to the 1913 Compiled Laws of North Dakota. Uniform Sales Act, § 69.

In the instant case the buyers sought to rescind and brought the action on the basis of rescission; but in so doing they did not elect between inconsistent existing remedies, for the remedy of rescission was not then available unless the sellers acquiesced in the rescission. The sellers did not acquiesce; on the contrary, they insisted that the contract was in full force and effect and that the buyers had no right to rescind. The contract therefore remained in full force for the

benefit of all the parties thereto,—as much for the benefit of the plaintiffs as for the benefit of the defendants. Rubber Trading Co. v. Manhattan Rubber Mfg. Co. 221 N. Y. 120, 116 N. E. 789; International Cheese Co. v. Garra, 107 Misc. 344, 176 N. Y. Supp. 523.

The overwhelming weight of authority is to the effect that in these circumstances, that is, where the buyer seeks to avail himself of the remedy of rescission and such remedy no longer exists, the buyer is not precluded from invoking the only existing remedies, namely, some remedy based upon the theory of the continued existence of the contract.

It is next contended that in any event the proposed amendment is of such character that it ought not to be permitted. The voice of authority is to the contrary. Urdang v. Posner, supra; Berman v. Littauer, 141 Md. 649, 119 Atl. 565; Williston, Sales, supra; Born v. Castle, 22 Cal. App. 282, 134 Pac. 347; Rae v. Chicago, M. & St. P. R. Co. 14 N. D. 507, 105 N. W. 721; Kerr v. Grand Forks, 15 N. D. 294, 107 N. W. 197.

In this state the courts are vested with wide discretionary power in the matter of granting amendments to pleadings in furtherance of justice. The proposed amendment will not change the cause of action. Born v. Castle, 22 Cal. App. 282, 134 Pac. 347. But even though the amendment resulted in a change of the cause of action in a technical sense, this would constitute no valid objection provided the amendment was one which the party otherwise should be permitted to make in the furtherance of justice. Rae v. Chicago, M. & St. P. R. Co. 14 N. D. 507, 105 N. W. 721; Kerr v. Grand Forks, supra.

"The mere fact that the amendment constitutes a departure in pleading, or adds or substitutes a new or different cause of action in the strict sense of those terms, is no good reason for disallowing an amendment. The statute nowhere forbids such an amendment. It directs that amendments shall be allowed at any stage of the proceedings, 'if substantial justice will be promoted thereby.' Rev. Codes 1899, § 6666. The only express statutory restriction with respect to the nature of the amendments to be allowed are those imposed by § 5295, defining failure of proof, and the last clause of § 5297, relating to amendments at or after the trial to conform to the proof. Section 5295 defines what shall be deemed a failure of proof, and in effect forbids

amendments at the trial to cure a failure of proof. The last clause of § 5297 in effect forbids an amendment to conform the allegations to the proof, if the proposed amendment effects a substantial change in the 'claim or defense.' Subject to the restrictions just mentioned, it is the duty of the court to allow amendments whenever 'substantial justice will be promoted thereby.' The object of statutes of this character is to facilitate and insure a full, fair and speedy determination of the actual claim or defense on the merits by requiring the court to permit the pleading to be amended, if for any reason they do not fully and fairly present all the facts essential to the real merits of the claim or defense. It is clear, therefore, that an amendment of the complaint is not objectionable merely because it introduces a new or different cause of action in the technical meaning of that term. In Smith v. Palmer, 6 Cush. 513, in dealing with this question, it was said (page 519): 'New counts are, not to be regarded as for a new cause of action, when the plaintiff in all counts attempts to assert rights and enforce claims growing out of the same transaction, act, agreement or contract, however great may be the difference in the form of liability as contained in the new counts. In such cases all the various counts are but variations in the forms of liability, which is the very purpose and object of amendments.' " Rae v. Chicago, M. & St. P. R. Co. 14 N. D. 507, 510, 105 N. W. 722.

The authorities seem all agreed that the plaintiff who brings an action under the Sales Act to recover the purchase price based on the theory of rescission may be permitted to amend so as to allege and claim damages for breach of warranty. The precise question was considered in Urdang v. Posner, supra, and Gorman-Head Auto Co. v. Barrett, 78 Okla. 34, 188 Pac. 1083. See also Allis-Chalmers Mfg. Co. v. Frank, ante, 295, 221 N. W. 75.

In Urdang v. Posner, 220 App. Div. 609, 222 N. Y. Supp. 396, the plaintiff sought to avail himself of the remedy of rescission and brought an action to recover the purchase price upon the theory that the contract had been rescinded. Upon the trial an amendment of the complaint was allowed so as to state a cause of action for damages for a breach of warranty, and recovery was awarded on that theory. On appeal it was contended that the trial court erred in permitting the amendment. In disposing of that contention the court said:

"Was the plaintiff properly permitted to amend the complaint at the trial, so as to set forth a cause of action for damages in the sum of $2,100? It is the respondent's contention that, by commencing an action upon the theory of rescission of the contract, the plaintiff had made an irrevocable election of remedies, and could not thereafter assert a cause of action upon a different theory. The defendant did not claim surprise or prejudice at the trial, when the plaintiff moved to amend the complaint and there was present no compelling reason for holding the plaintiff to an irrevocable election of remedies. The facts show that the plaintiff had, after knowledge of the alleged fraud, continued to use the violin. He therefore in effect had ratified the purchase, and hence, although he had suffered damage through a fraud, he did not have a cause of action for rescission. In drawing his complaint on the theory of rescission, therefore, he was pursuing a mistaken and ineffectual remedy. Such a choice does not constitute an irrevocable election of remedies. As was said by Judge Crane in Clark v. Kirby, 243 N. Y. 295, 303, 153 N. E. 82:

" 'The election of remedies is largely a rule of policy, to prevent vexatious litigation. . . . In this state we say that, where a party, knowing all the facts, elects to sue in rescission instead of for damages, he must pursue the course he has taken. Even then, if the remedy chosen be insufficient, or inadequate, or useless, the rule had not barred the plaintiff from taking other timely methods to obtain his rights. . . . All procedure is merely a methodical means whereby the court reaches out to restore rights and remedy wrongs; it must never become more important than the purpose which it seeks to accomplish. Unless some necessary requirement has been omitted, a wrong move or mistake in the method of seeking relief from the courts ought not to furnish protection for a wrongful act.'

"The plaintiff, therefore, was properly permitted to amend his complaint, so as to allege a cause of action in damages." 220 App. Div. 611.

The same rule is announced in Gorman-Head Auto Co. v. Barrett, supra, and in Allis-Chalmers Mfg. Co. v. Frank, supra.

It is next asserted by the appellants that inasmuch as the Statute of Limitations might be pleaded in bar in any action which the plaintiffs might now institute to recover damages for breach of warranty,

the plaintiffs should not be permitted to amend the complaint. If the amendment introduced a new cause of action against which the Statute of Limitations had run there probably would be merit in the objection. But the proposed amendment does not introduce a new cause of action or bring in any new parties. The elements of a cause of action are the breach of a duty owing by one to another with the resultant injury. The cause of action in this case is made up of the contract of sale and the breach of the warranty contained in it. Bay City Iron Works v. Reeves, 43 Tex. Civ. App. 254, 95 S. W. 740. If there was a warranty and a breach thereof, as alleged in the complaint, a cause of action arose in favor of the plaintiffs which entitled them to recover compensation from the defendants for the injuries resulting. It is true that under the Sales Act plaintiffs might elect between different remedies or modes of relief; but they had only one cause of action. Whether plaintiffs sought recovery as upon a rescission, or damages for breach of warranty as upon an affirmance, of the contract, their claim to relief, in either case, was based upon the same primary right of the plaintiffs and the same wrong done by the defendants in violation of that right. 14 Standard Proc. p. 362. A recovery by the plaintiffs as upon a rescission would, of course, have constituted a bar to a recovery for breach of warranty or *vice versa.* More v. Burger, 15 N. D. 345, 350, 107 N. W. 200. Hence the proposed amendment will not result in introducing a new cause of action in substance at all. 21 Cal. Jur. pp. 197–202; 20 Standard Proc. pp. 347, et seq.; 1 Enc. Pl. & Pr. p. 564; 2 Words & Phrases, pp. 1015, et seq.; 1 Words & Phrases 2d Series, pp. 599, et seq. See also 14 Standard Proc. p. 632. The running of the Statute of Limitations was arrested by the commencement of the action and the proposed amendment, if made, will relate back to, and in legal effect be a continuation of, the original complaint. 1 Enc. Pl. & Pr. p. 621; Frost v. Witter, 132 Cal. 421, 84 Am. St. Rep. 53, 64 Pac. 705. No new cause of action being introduced, the fact that the Statute of Limitations would preclude plaintiffs from instituting another action to recover damages for the breach of the warranty in event they were denied leave to amend and their action dismissed without prejudice, is a reason for allowing an amendment to be made rather than for disallowing it. 31 Cyc. 408; 1 Ency. Pl. & Pr. p. 600.

It is next contended that the question whether an amendment should be allowed is one for the trial court; and that this court may not, with propriety, make provision for an amendment of the pleadings in the court below. This contention is clearly without merit. That an appellate court in reversing a decision and remanding the cause for further proceedings may direct the court below to allow amendments of pleadings is settled beyond controversy. 1 Enc. Pl. & Pr. p. 617; 4 C. J. 1197; Gamache v. South School Dist. 133 Cal. 145, 65 Pac. 303; Mullally v. Townsend, 119 Cal. 47, 50 Pac. 1066. · This court is vested with full appellate power. It may reverse, affirm or modify the judgment or order appealed from as to any or all of the parties; and may, if necessary or proper, order a new trial or further proceedings in the court below. Const. § 86; Compiled Laws 1913, §§ 7844, 7845.

This court is an agency of the state, created by the people in the fundamental law, for the public administration of justice. The same fundamental law which created this court also commands that "all courts shall be open and every man having any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay." Const. § 22. Whether the appellate court in remanding a case for further proceedings should suggest or direct the amendment of the pleading must of necessity be controlled by the facts in each case. An amendment should be directed only where it clearly appears to the satisfaction of the court, upon the record before it, viewed in light of all the circumstances, that such procedure will be in the furtherance of justice. An amendment should not be directed or allowed merely to afford a party a technical advantage. In the instant case, the direction in the former opinion that plaintiffs be allowed to amend their complaint was made after a careful consideration of the record. The record shows that a former trial of this case resulted in a verdict in favor of the plaintiffs, which verdict was vacated and a new trial ordered on appeal to this court because of errors in the admission of evidence. Fuller v. Fried, 52 N. D. 511, 204 N. W. 13. An examination of the transcript and the briefs on the former appeal shows that little or no contention was made by the defendants that the remedy of rescission was not available to the plaintiff. In that case, as

well as on the trial involved on this appeal, the question on which the defendants placed the greatest reliance was that the contract under which the plaintiffs purchased the machinery was one between the plaintiffs and the Minneapolis Steel & Machinery Company and not one between the plaintiffs and the defendants; and it was urged that the plaintiffs were precluded from proving that the contract was other than the one purported to be evidenced by the written instrument. It is true that on the trial involved here, there was a motion for a directed verdict in which it was said that the plaintiffs had failed to establish a cause of action and that they were estopped from carrying on the suit or obtaining a recovery for the reason that they had continued to use the tractor for a term of approximately two years. It seems, however, to have been the contention of the defendants that the retention and use of the machinery constituted a waiver of all right of action based upon the breach of warranty rather than that it constituted a waiver of the remedy of rescission.

In a word, upon the record before us it is not at all clear that the defendants pressed the point that the remedy by rescission was not available (because of the failure to return or offer to return the machinery with sufficient promptness) in such manner as to impress upon the trial court, or the opposing party, that such point was made. In any event the trial court ruled in favor of the plaintiff; and in all the circumstances we do not feel that the failure of the plaintiffs to obtain an amendment to the complaint should bar them from an opportunity to do so upon another trial; but rather that they should be permitted to amend the complaint to the end that they may be enabled to present the facts stated in their complaint for determination and obtain such relief as they may be entitled to receive under our law upon the facts alleged in the complaint and established by their evidence. In short, we are of the opinion that the ends of justice will be best subserved by adhering to the disposition made of the cause in the former opinion. A rehearing is denied.

BURKE, Ch. J., and BIRDZELL, NUESSLE, and BUER, JJ., concur.