Matthews, J.
On August 21, 1930, the defendant was unable to pay its debts as they matured. It recited that fact in an agreement entered into by it, as party of the first part, with three individuals acting as a committee of all its creditors, as party of the second part, and all its creditors as parties of the third part. By the agreement the committee of creditors was placed in control of the operation of the defendant’s business, including the purchase of supplies and the control of the receipts and disbursements, all for the purpose of conserving the net assets for distribution primarily among the creditors. It was expressly stipulated that no payments should be made to any creditor on existing debts except by the committee of creditors in the form of dividends on general claims or in full on claims *436 entitled to priority, and the creditors covenanted and agreed that they would not “so long as these presents shall remain in force, institute any suits, actions, or legal proceedings of any nature against the said John T. Towsley Manufacturing Company or otherwise molest it in its assets or property,” and that the agreement might be pleaded as a defense to any action instituted by any creditor.
The Cincinnati Bank & Trust Company was a general creditor of the defendant and was a party to this agreement. Its president was a member of the creditors’ committee. After this agreement was executed the creditors’ committee took control of the defendant’s business, continued to use The Cincinnati Bank & Trust Company as a depository, and at the time thé receiver was appointed in this action there was a small balance to the credit of the defendant that had been deposited while the creditors’ committee had been in control.
This plan for continuing the operation of the defendant’s business failed, and after the business had been discontinued for several months this action was filed, in which the plaintiff alleged failure to carry 'out the agreement in various respects and prayed for a rescission of the contract, for an accounting by the creditors’ committee, and others in charge of defendant’s affairs, (although only the corporation was made a defendant) for judgment, appointment of a receiver and general equitable relief.
A-dividend has been declared subject to counter-claims and set-offs.
The Cincinnati Bank & Trust Company has not paid to the receiver the balance on deposit and the receiver contends that the amount of this balance should be deducted from the dividend. The Cincinnati Bank & Trust Company contends that the amount of the balance on deposit should be credited on its claim and the dividend computed on the balance due it thus obtained.
In approaching this question it should be kept in mind that this is a controversy between creditors. The receiver representing the creditors generally is contending for what he conceives to be the equality of distribution provided for in the creditors’ agreement, and the Cincinnati Bank *437 & Trust Company is contending for the right of setoff or extinguishment of mutual credits pro tanto and the advantage which that would give it. The debtor defendant has no interest in this controversy. As against it all creditors are entitled to be paid in full, but owing to its insolvency the general creditors will receive only a small dividend upon their claims.
It is clear that at the time this agreement was entered into the defendant was insolvent, not in the sense of the Federal Bankruptcy Law, but in the sense in which that term is used in the state law of Ohio. Therefore, in the absence of acquiescence by the other creditors, no creditor knowing this condition could obtain any advantage or preference. The agreement to abstain from attempting to gain an advantage and to take a pro rata dividend on general unsecured claims simply placed in conventional form an existing legal status and provided for its preservation during the period of operation of the business by the creditors’ committee. Had the creditors’ committee continued in control it could have withdrawn this deposit and the Cincinnati Bank & Trust Company would have been entitled to no more than its pro rata share in it in any event. It is clear that it would not have been entitled to apply it on the debt which defendant owed it at the time the agreement was made. It is claimed, however, that because this agreement was not carried out and for that reason the plaintiff and other creditors are entitled to and the plaintiff has, in terms at least, secured, a rescission of it, the rights of the parties must be determined as though this agreement had never been made. As all creditors who signed this agreement committed themselves to the status quo at that time, no creditor can now claim a different status, unless that agreement between them is to be entirely destroyed ab initio because on default by the debtor, they had recourse to the court for relief, based, in part, on their right to a rescission because of such default.
As the court views the situation it is unnecessary to consider the doctrine of set off in any of its phases. We are considering here the rights of creditors inter sese upon distribution of an insolvent’s assets. The precise issue *438 here presented could not arisé in the absence of an agreement. There was such an agreement. It was upon consideration for a lawful purpose, and if it is to prevail this bank balance cannot be credited as a part payment on the bank’s pre-existing debt.
Then assume that this contract has been rescinded in toio as to all parties. Rescission can only be obtained by restoring or offering to restore that received under the agreement. In other words, the parties should be placed in their original positions. While this contract could not be rescinded strictly speaking, and the relief which has been accorded the creditors was not dependent on such rescission, still assuming such rescission it would place all creditors in the same position insofar as the point here involved is affected as they are placed by the terms of the agreement itself. In other words, their rights would be determined as of the date of the agreement in either event.
As a matter of fact there has been no rescission of this contract even as against the defendant. There was no restoration of the status quo which is a prerequisite. Fuller v. Fried, 57 N. D. 824; 224 N. W., 668; Groenland v. Phoenix Sprinkler & Heating Co., 240 Mich., 621; Dooley v. Stillman, 46 R. I., 332; 52 A. L. R., 1505 and Mutual Ins. Co. v. Rose, 294 Fed. 122 at 133.
The relief sought and obtained was in conformity to the contract based on its breach by the defendant. It created equitable rights enforcible without rescission.
Furthermore there was no pretense of rescinding the contract of the creditors among themselves. Only one creditor was a party to the record. That creditor did not assume to act for all creditors and could not rescind for all. Stevens v. Times-Star, 72 O. S, 112 at 154. The de—cree of the court would only bind the parties to the action. The receiver, however, acts for the court and the property under his control is in custodia legis for those entitled under the law which includes all creditors.
In May v. Henderson, 268 U. S., 111 the facts were that a debtor made a general assignment for the benefit of creditors to two persons one of whom was the president of a bank which was a creditor. Creditors, including the *439 bank, signed an agreement for a pro rata distribution among all creditors. While the assignees were in control they deposited the estate funds in the creditor bank and upon the filing of a petition in bankruptcy it attempted to apply this deposit as a credit upon its debt. The question arose in a summary application to require the assignees to account for this deposit. Discussing this attempt as a preference the court at 113 and 114 said:
“We think that the finding of the Circuit Court of Appeals that this application of the bank deposit on the note of the bankrupt constituted a ‘partial payment of the note as fully as if the assignees had given their cheek or withdrawn the money from the bank and paid it over the counter’ is correct, and that both the assignees must be held legally responsible for this result.”
Certainly the bank could not, in the face of its agreement, have retained a direct payment on its debt to the detriment of the other general creditors, and the foregoing language of the Supreme Court emphasizes the fact that the application of this deposit is the equivalent of a direct payment by a check to its order.
The right of set-off is given by statute, but like most rights, it may be relinquished by agreement as in this case, and even in the absence of an agreement the right may be barred by conduct making it inequitable to permit the set off to be pleaded.
In Bank v. Lumber Co., 176 Pac. (Wash.) 553, it was held that a purchaser who had agreed to pay “spot cash” was estopped as against an assignee to plead.a set off of a claim owing to it at the time as an accommodation endorser.. To the same effect is Jacobs v. Bernstein, 141 N. Y. S. 287.
As stated in the syllabus the court held in Lutz v. Williams, 91 S. E. (W. Va.) 460, that:
“The statutory right of a set off may be waived or relinquished by an agreement founded upon a valuable consideration, and such agreement may be implied as well as express.
“By its acceptance of a special deposit, a bank impliedly *440 binds itself not to set off against it a debt due the depositor.”
A case in which the facts are substantially the same as the facts in this case is Fitzgerald v. Bank, 64 Minn., 469. A creditors’ meeting was held at which the bank’s cashier was present, a verbal agreement was reached to place an agent in control with authority to manage the business, to make collections and accumulate and deposit the debtor’s money. This agent deposited the money in the creditor bank and upon failure of the plan and the assignment of the debtor, the bank claimed the right to credit the deposit upon its debt. The court denied this right on the ground of estoppel. At page 471 the court said:
“It was in the nature of a special deposit for a well-understood purpose and object. Certainly good faith and fair business dealing require that the amount of this deposit shall not be so diverted as to give a party to the agreement a preference over other creditors.
“So the question is whether the law will permit the bank which received the money under such circumstances to set off notes held by it against the insolvent firm to the amount of the deposit, and thus indirectly obtain a preference. If this could be done; the plainest principles of equitable estoppel would be disregarded.”
In 24 R. C. L., at page 808, it is said:
“The right to assert a set off or counterclaim may be waived by contract, express or implied. An agreement to waive the right, if founded on a good consideration is undoubtedly binding. So the receipt of money by one person from another to be applied to a specific purpose, implies an agreement on the part of the former not to apply it to any other purpose, and of course not to his own by pleading a set off.”
For these reasons the court holds that the Cincinnati Bank & Trust Company, is not entitled to credit the deposit upon the indebtedness, that the deposit should have been paid to the receiver, and that in lieu thereof the amount should be deducted from any dividend declared upon its claim.